ALCORN, ON BEHALF OF CITY OF CINCINNATI, *v.* DECKE-
BACH, AUD., ET AL.

(Decided December 31, 1928.)

*Mr. Robert S. Alcorn* and *Mr. William Thorndyke,* for plaintiff.

*Mr. John D. Ellis,* city solicitor, and *Mr. Edward F. Alexander,* for defendants.

Ross, J. This case is here on appeal from the court of common pleas of Hamilton county, Ohio. The suit was brought by a taxpayer of the city of Cincinnati, who also uses and pays for water furnished by the waterworks department of said city, to enjoin the defendants, the city auditor and the city treasurer, from performing their respective official offices in incumbering or depleting the waterworks fund of said city for the payment of 300 fire hydrants.

The pleadings — the petition, the amended answer, and the amended reply — are brought to our attention by a motion for judgment on the pleadings, filed by the defendants. The pertinent facts presented in the pleadings are:

On February 9, 1927, by Ordinance No. 79, council of the city of Cincinnati ordained Section 128-1 of its Code of Ordinances as follows, to wit:

"Section 128-1. The superintendent of waterworks, with the approval of the city manager, shall install and supply with connections all necessary fire hydrants *for fire department purposes* and for the efficient functioning of the waterworks. The expense of purchasing and installing such equipment shall be paid from the waterworks fund."

On May 2, 1927, council adopted as a part of its administrative code, Section 10, Article 7, Department of Waterworks, which reads as follows:

"Section 10. No charge shall be made for supplying water for extinguishing fire, cleaning fire apparatus, or furnishing or supplying fire hydrants and fire hydrants connections, or for the cleaning or use of any public buildings belonging to the city."

Pursuant to the power attempted to be conferred by Ordinance No. 79 the city manager of Cincinnati, on behalf of the department of waterworks, entered into a contract providing for the purchase of 300 fire hydrants, and the city auditor of said city certified the contract against the funds of the waterworks department.

The present charter of the city of Cincinnati, as amended November 2, 1926, contains Section 9 of Article 4, as follows:

"Revenue derived from the waterworks of the city shall be used for the purposes of the said waterworks, and for no other purpose, and shall not be subject to transfer to any other fund."

A further provision of the charter of the city of Cincinnati, as amended November 2, 1926, is found

in Section 1, Article 2, thereof, and is as follows:

"Section 1. All legislative powers of the city shall be vested, subject to the terms of this charter and of the Constitution of the state of Ohio, in the council. The laws of the state of Ohio not inconsistent with this charter, except those declared inoperative by ordinance of the council, shall have the force and effect of ordinances of the city of Cincinnati; but in the event of conflict between any such law and any municipal ordinance or resolution the provisions of the ordinance or resolution shall prevail and control."

It is alleged by the plaintiff and denied by the defendants that the use of revenue derived from the waterworks department of the city of Cincinnati to purchase fire hydrants for fire department purposes is a use of said revenue of said waterworks department for purposes other than of said waterworks, and that said proposed payment by the defendant officers of said city constitutes an illegal diversion of the funds of said waterworks department.

It is admitted by the parties that the city waterworks of the city of Cincinnati was established a very long time ago, in accordance with existing laws of the state of Ohio, the moneys being raised by taxation as well as by bond issues, and the department having since been extended and improved from its own funds and from funds secured by pledging the general credit of the city of Cincinnati, to wit, by issuing waterworks bonds, millions of dollars of which are now outstanding. It is further admitted that no rental or other charge is made against the waterworks department for water pipes and conduits in the highways and public places of the city;

that the practice in this city heretofore, both before and after the adoption of the existing charter, has been that the fire department install and maintain the fire hydrants at its own expense, and the waterworks department install and maintain the connections at the fire hydrants at the expense of the waterworks fund; and that said fire hydrants from time to time, it is claimed by the defendants, properly, and by the plaintiff, improperly, have been used by the streetcleaning department for flushing the streets, by private contractors for sprinkling the streets, by private contractors engaged in street improvement work, by private contractors engaged in large building contracts, by the waterworks department to make pressure tests, and as a source of supply in times of emergency for hauling water to outlying communities temporarily cut off from their water supplies.

It is further alleged in plaintiff's amended reply that the use of the fire hydrants can only be had by obtaining a ''spanner'' permit from the fire department, and by payment for same before use of the water.

Nowhere in the pleadings is there any allegation describing or defining a fire hydrant. Funk & Wagnalls' Standard Dictionary defines a fire hydrant as '' a hydrant set up in a thoroughfare for use in extinguishing fires, having connections for hose.''

A hydrant in the same work is defined to be: ''A discharge pipe connected with a water main, *especially* one in a street for use in case of fire, for watering the streets, etc., having a valve that leaves the pipe empty when not in use; a water plug; fire plug.''

These definitions confine the meaning of the term "fire hydrant" to a contrivance for use in the extinguishing of fire, unquestionably a fire department purpose.

The court below rendered judgment for the plaintiff enjoining the defendants from using the waterworks funds for the payment of the purchase price of fire hydrants.

The language of Section 9 of Article 4 of the charter of the city of Cincinnati, as amended November 2, 1926, and quoted *supra,* is clear in confining waterworks funds to waterworks purposes. This charter provision is binding upon council of the city of Cincinnati unless the statutes or the Constitution of Ohio at the time of the adoption of said charter "provisions" provided otherwise.

It is alleged in the amended answer and urged by counsel that by virtue of Section 1 of Article 2 of the city charter, quoted *supra,* Sections 3963 and 14769 of the General Code of Ohio are made a part of the law of the city of Cincinnati, unless modified by ordinance. In so far as Sections 3963 and 14769, General Code, or any other section of the General Code, attempt to prohibit the city waterworks department from making a charge for supplying fire hydrants to the fire department of said city, or making a charge for installing said fire hydrants, said sections are unconstitutional and void, in that said sections violate rights conferred on said municipalities by Section 4, Article XVIII, of the Ohio Constitution, and, further, result in taking private property for public use without compensation therefor, in violation of Section 19 of Article I of the Ohio

Constitution. *Board of Education* v. *City of Columbus*, 118 Ohio St., 295, 160 N. E., 902.

It is interesting to note that in the history of Section 3963, General Code, as found in 66 Ohio Laws, 206, 207, 70 Ohio Laws, 11, 76 Ohio Laws, 84, 102 Ohio Laws, 94, and 108 Ohio Laws, pt. 2, 1160, fire hydrants are included and then excluded from the compulsory provision of the statute, and that, up to the time of the amendment of this section in 102 Ohio Laws, hydrants were specifically included with connections to hydrants, required to be furnished by the waterworks trustees, etc., without charge. We think that the elimination of the words ''and hydrants'' from this act as it appeared in 76 Ohio Laws, but excluded in 102 Ohio Laws, was not accidental, nor due to an effort to save words. The duty to install fire hydrants is not imposed by Section 3963, General Code, as amended at present. In passing it would seem that Section 14769, General Code, has been repealed by implication, this section being 1536-528, Revised Statutes—repealed.

The sole question, therefore, for our determination, is whether fire hydrants, ''for fire department purposes,'' come within the scope of a waterworks purpose. Having in mind the occasional uses suggested, other than the extinguishing of fires, we are still of the opinion that they are not so included. If they were included, special legislation and special ordinances of the city would be unnecessary in order to provide for their payment out of waterworks funds. In fact the ordinance providing for their installation and supply, or at least the connections therefor, specifically states that they are for ''fire department purposes,'' and we are unable to ac-

quiesce in the proposition that a fire department purpose is synonymous with a waterworks purpose, or included therein.

While a fire hydrant is capable of being used for flushing the streets, or by private contractors for their specific purposes, the principal designed use of such hydrant is to furnish a surface connection for fire hose, to furnish the fire department means for extinguishing fires. A hydrant designed for such purpose can no more be considered within the design of a waterworks purpose than the hose which is attached to the hydrant, or the fire engine which is attached to the hose, or the other apparatus which may be used in connection therewith in carrying the water to various places and various heights.

The line of cleavage between the waterworks department and the fire department, which departments must necessarily co-operate for the benefit of the city at large, must be drawn somewhere, and it is our opinion that this line should not extend in favor of the fire department beyond the main connection or unions, and that such line does not include the fire hydrants upon the side of and for the purposes of the waterworks department, but, on the contrary, excludes the fire hydrant, it being a contrivance for the benefit of, and the purposes of, the fire department.

The pleadings indicate that the fire hydrants are under the sole control and management of the fire department. Before they can be used, permits must be obtained from the fire department for their use, and the fire department is responsible for keeping them free and open during inclement weather, so that they will be available to extinguish fires.

The peculiar revenue of the waterworks department places it in a position where the disposition of such revenue is subject to close scrutiny and limitation in order that its application to legitimate and appropriate waterworks purposes may be secured. The interest of bondholders and water lessees, in our opinion, prevents a wider construction of the charter provisions than that above stated. *City of Cincinnati* v. *Roettinger,* 105 Ohio St., 145, 137 N. E., 6.

In our opinion both Section 128-1 of the Ordinances of the City of Cincinnati and Section 10 of Article 7 of the administrative code of the department of waterworks are in contravention with and violate the basic law of the city, to wit, Section 9 of Article 4 of the City Charter, as amended November 2, 1926. Both the ordinance and the section of the administrative code provide for a payment out of the waterworks fund, not only unauthorized by the charter provision referred to, but distinctly prohibited by it.

For these reasons, the motion of the defendants for judgment on the pleadings will be denied, and as the amended answer sets up no facts which, if proven, would constitute a defense to the petition, a similar motion, if presented by the plaintiff, will be granted.

*Decree accordingly.*

HAMILTON, P. J., and CUSHING, J., concur.