## TRANSFER OF FUNDS OF ATHENS (City) In Re

Ohio Common Pleas, Athens Co

Decided June 7, 1935

Samuel B. Erskine, Athens, for City of Athens.

Gordon B. Gray, Athens, for objecting taxpayers.

M. D. Hughes, Athens, for The Bank of Athens National Banking Association, Trustee.

J. Perry Wood, Athens, and Henderson, Burr, Randall & Porter, Columbus, for The Southern Ohio Electric Company.

## OPINION

By ROWLAND, J.

On April 8, 1935, the city of Athens filed its certain petition in this court being Cause

No. 16156, praying that authority be granted by this court for the transfer of $2,500 from the water works funds of said city to the electric survey fund of said city. The petition says that it has under its supervision public funds in the sum of $2,500 in the water works fund which is not required for the purpose for which said fund is established; that it is necessary to transfer $2,500 from said water works fund to the electric survey fund for the reason there is a lack of ⁀⁀nds in said electric survey fund. The petition further sets forth that the counsel of the city of Athens duly passed a resolution declaring it necessary to transfer said $2,500 from said water works fund to said electric survey fund on March 18, 1935.

To this petition there have been filed a great number of objections, such objections having been filed by The Bank of Athens, National Banking Association as trustee under a certain mortgage; Southern Ohio Electric Company, a taxpayer and water consumer of said city; A. E. Whaley, L. W. Roberts, A. H. Brooks, R. H. White and D. R. Zenner, who filed objections as property owners and water consumers of water of said city.

It is the claim on the part of the city in support of its prayer for authority to transfer said sum from the water works fund to the electric survey fund that there is a surplus in said water fund not needed in said water fund in the sum of $2,500 and upwards and that said sum is needed for the electric survey fund. It is claimed by those representing the city that authority is given under and by virtue of provisions of §§3958, 3959, 5625-12a to 5625-13g, GC, for such transfer.

Sec 3958, GC, provides as follows:

"For the purpose of paying the expenses of conducting and managing the water works, such director may assess and collect from time to time a water rent of sufficient amount in such manner as he deems most equitable upon all tenements and premises supplied with water. When more than one tenant or water taker is supplied with one hydrant or off the same pipe, and when the assessments therefor are not paid when due, the director shall look directly to the owner of the property for so much of the water rent thereof as remains unpaid, which shall be collected in the same manner as other city taxes."

Sec 3959, GC, provides as follows:
"After paying the expenses of conducting and managing the water works, any surplus therefrom may be applied to the re-

pairs, enlargement or extension of the works or of the reservoirs, the payment of the interest of any loan made for their construction or for the creation of a sinking fund for the liquidation of the debt. The amount authorized to be levied and assessed for water works purposes shall be applied by the council to the creation of the sinking fund for the payment of the indebtedness incurred for the construction and extension of water works and for no other purpose whatever."

Sec 5625-13, GC, effective July 26, 1929, provides as follows:
"No transfers shall be made from one fund of a subdivision to any other fund, by order of the court or otherwise, except as hereinafter provided:

a. The unexpended balance in a bond fund that is no longer needed for the purpose for which such fund was created shall be transferred to the sinking fund or bond retirement fund from which such bonds are payable.

b. The unexpended balance in any specific permanent improvement fund other than a bond fund, after the payment of all obligations incurred in the acquisition of such improvement, shall be transferred to the sinking fund or bond retirement fund of the subdivision; provided that if such money is not required to meet the obligations payable from such funds, it may be transferred to a special fund for the acquisition of a permanent improvement or improvements, or with the approval of the Court of Common Pleas of the county wherein such subdivision is located, to the general fund of the subdivision.

c. The unexpended balance in the sinking fund or bond retirement fund of a subdivision, after all indebtedness interest and other obligations for the payment of which such fund exists have been paid and retired, shall be transferred in the case of the sinking fund to the bond retirement fund and in the case of the bond retirement fund to the sinking fund; provided that if such transfer is impossible by reason of the non-existence of the fund herein designated to receive the transfer, such unexpended balance, with the approval of the Court of Common Pleas of the county wherein such subdivision is located, may be transferred to any other fund of the subdivision.

d. Unless otherwise provided by law, the unexpended balance in any special fund, other than an improvement fund, existing in accordance with §5625-9, GC, paragraph (d), (f) or (g), or §5625-11, GC, may be transferred to the general fund or the sink-

ing fund or bond retirement fund after the termination of the activity, service or other undertaking for which such special fund existed, but only after the payment of all obligations incurred and payable from such special fund.

• e. Moneys may be transferred from the general fund to the sinking fund or the bond retirement fund to meet a deficiency in either of the latter funds.

f. Moneys appropriated therefor may be transferred from the general fund of a subdivision to a fund authorized by §§5625-11 or 5625-12, GC, or to the proper fund of a district authority.

Except in case of transfers in accordance with paragraphs (e) and (f) of this section, transfers herein authorized shall only be made by resolution of the taxing authority passed with the affirmative vote of two-thirds of the members thereof."

Sec 5625-13a, GC, effective June 7, 1933, provides as follows:

"In addition to the transfers authorized in §5625-13 GC, the taxing authority of any political subdivision may transfer any public funds under its supervision, except the proceeds or balances of loans, bond issues, or special levies for the payment thereof from one fund to another in the manner hereinafter provided."

Sec 5625-13f, GC, effective June 7, 1933, provides as follows:

"If, upon the hearing the court finds that the notice has been given as herein required, that the petition states sufficient facts, that there are good reasons or that a necessity exists for the transfer, and that no injury will result therefrom, it shall grant the prayer of the petition and order the petitioners to make such transfer."

The Bank of Athens, National Banking Association as one of the objectors sets forth in its objection and the evidence supports the allegations of such objection that said bank as trustee is the owner of a mortgage executed by the city of Athens on January 1, 1934, to said bank as such trustee wherein there is pledged to said bank as such trustee the property included in the water works system of the city of Athens, Ohio, as well as all revenues, earnings and profits derived from said water works system to secure an obligation on the part of said city as evidenced by certain bonds in the sum of forty thousand dollars, bearing interest at the rate of four per cent per annum, payable semi-annually, said bonds bearing date of January 1,

1934, and maturing two thousand dollars on January 1st of each year from 1936 to 1952, both inclusive and three thousand dollars on January 1st in each of the years 1953 and 1954.

It is the contention of the said Bank of Athens as such trustee that a transfer of such funds is not warranted as prayed for by the petitioner for the reason that it will interfere with said mortgage security and in violation of the terms thereof and further it is illegal and contrary to law.

The other objectors set forth, among other things as the basis of their objection that they are consumers of the water furnished by said city of Athens in large amounts; that the water works fund is a trust fund and should be used and expended for the benefit of water works consumers exclusively and not transferred to other funds for other purposes; that if there is a surplus, that said surplus should be used in connection with the water works system as provided in §3959, GC, or if not needed for any of the purposes named in said §3959 GC, that the water rental should be reduced. In other words, the objectors claim that there is no warrant in law or in equity that justifies a court in authorizing or permitting a transfer of funds from the water works fund to the electric survey fund for that in so doing the city under the guise of a rental would be, in fact, imposing a tax.

At the outset the court desires to state that the officers of the city have followed the different steps by resolution, etc., necessary to present its application to this court for such transfer. It is within the jurisdiction of the council of the city to determine in its discretion and judgment if such electric survey should be made. It can be readily taken for granted that members of the council are not experts nor electric engineers and that in arriving at a conclusion as to whether the rate for electric current is reasonable and proper considering fairness to producers as well as the consumers thereof, a survey or investigation covering that subject might be expedient and necessary. As before stated, however, that is a matter within the judgment and discretion of council and is no part of the province of this court at this time.

This court, however, is confronted with two propositions: one of law and one of fact, relative to which its judgment is necessary and included within the issues presented in this case.

The questions of fact arise under the pleadings taken in conjunction with §5625-13f, GC, and as to these questions of fact,

the court finds that notice has been given as required by law. The court further finds that the city is without funds with which to carry on an electric survey and further that such survey appears to be an expedient program as declared by the council of the city of Athens in its proceedings. However, one of the conditions imposed by §5625-13f, GC, provides that it must be found that no injury will result therefrom before the prayer of the petition should be granted.

It is admitted by all parties that the charges made by the city as against the consumers of water is a rental and not a tax. That is a trust fund. It is also admitted that there is an indebtedness now against the city of Athens for water works improvements made a great number of years ago; that said water works property and its rentals and revenues are pledged for the payment of the said forty thousand dollars bond obligations bearing date of January 1, 1934.

In arriving at the conclusion as to whether an injury will result by reason of such transfer it cannot be assumed that the consumers of electric current and water consumers are the same persons. Neither can it be assumed that if they were, that the water rentals and electric service would be in the same proportions. The court can arrive at no other conclusion than if "A" is a water consumer and has been required to pay rentals into the water works fund for such water consumption ▆▆▆▆▆ at a rate that will create a surplus and not needed in the water works fund then in that instance such excess would not be a rental but would in a sense become a tax and would be in violation of §§3958 and 3959, GC, and therefore it would work a direct injury to the water consumers.

We now have in Ohio a constitutional amendment lately passed by the people of Ohio limiting the rate of taxation as against real estate. If a city were permitted to create a surplus in the water fund by exhorbitant water rentals and then were permitted to transfer such surplus to other funds, it would open the way for municipalities desiring to obtain funds in excess of those raised by general taxation in conformity to said constitutional amendment and by subterfuge defeat the constitution of Ohio relative to said tax limitation.

If there is any surplus in the water works funds of the city of Athens under all the rules of fairness and equity and the law as well, such surplus belongs ▆▆▆▆▆ as a trust fund to the water consumers and not to the general public and for the court to authorize a transfer would work an injury as to such consumers.

In coming to the objection filed by The Bank of Athens as such trustee, it appears from the pleadings and the evidence that there is a mortgage of forty thousand dollars now standing against the water works plant, its property and its ▆▆▆▆▆ revenues. The rights of the mortgagee herein rise higher than the water consumers to this fund because it is pledged for the security of this obligation. The terms of this mortgage should be kept in good faith by the city of Athens and its officers and a court should not lend its aid in any proceeding that would tend to destroy its purport or cause it to be other than inviolate. The method and plan by which this mortgage, in law and equity ought to be paid is from the water works rentals. Before we are generous we should be just and to be just respecting this mortgage contract requires that it be first paid before its security is transferred or becomes lost to the mortgagee through any action of the city or the courts.

It might be noted that the evidence in this case does not disclose that the city of Athens has in said water works fund the sum of $2,500 but rather the claim of the city as to said $2,500 in said water works fund reveals itself to be a claimed credit as against the government of the United States of America. It would appear that the appropriate time, if ever appropriate, to have brought this action for transfer would be after such funds were actually in the water works fund as an actuality and not in the form of a governmental credit.

All the objectors include within their objection the contention and assertion that the city is without authority under the laws of Ohio to make such transfer. This question was before the Supreme Court of Ohio and was determined in the case of **City of Cincinnati et v Roettinger**, a tax payer, in 105 Oh St, 145, the syllabus being as follows:

"1. Sec 3959, GC, is constitutional and operates as a valid limitation upon the uses and purposes for which revenues derived from municipally owned water works may be applied. By virtue of the provisions of that section, surplus revenues derived from water rents may be applied

268

only to repairs, enlargement or extension of the works, or of the reservoirs, and to the payment of the interest of any loan made for their construction, or for the creation of a sinking fund for the liquidation of the debt.

2. Sec 3799, GC, is in the nature of a limitation upon taxation, and as applied to cities and villages under charter governments does not violate any of the sections of Article XVIII of the Ohio Constitution and operates to prevent the transfer of revenues from the water works fund to the general fund."

On page 154 Chief Justice Marshall, who wrote the opinion in said case, used the following language:

"It is apparent that any effort on the part of any municipality to deliberately impose rates and charges for a water supply, not for the purpose of covering the cost of furnishing and supplying the water, but for the purpose of making up a deficiency in the general expenses of the municipality, and which cannot be met within the limits of taxation otherwise provided, is to that extent an effort to levy taxes, and, to the same extent, an effort to evade the statutory and constitutional limitations upon that subject."

A case similar in nature was again before the Supreme Court of Ohio in the case of Hartwig Realty Co. v City of Cleveland et, as reported in 128 Oh St, p. 583. This was decided Nov. 14, 1934 The syllabus of said case is as follows:

"1. The provisions of §3959, GC, prescribing and limiting the use of funds created by water rentals, prevent the diversion thereof to a use for any purpose other than therein enumerated.

"2. The appropriation of such waterworks funds to the construction or maintenance of a sewage disposal plant may not be validated by the enactment of a city ordinance providing that 'the operation of sewage disposal plants shall be treated and construed as being part of the operation of water purification'."

Council for the city of Athens claims that under and by virtue of §§5625-13a to 5625-13g, GC, authority is granted under the laws of Ohio for such transfer. These sections just above referred to became effective June 7, 1933. The case of The Hartwig Realty Co. v City of Cleveland was decided November 14, 1934, approximately

one and one half years thereafter. While these other sections are not mentioned by the Supreme Court in passing upon the issues presented in the Cleveland case, it surely cannot be presumed on the part of this court that the members of the Supreme Court were unaware of their existence and contents.

The court therefore finds that it has not been shown that there is a surplus in said water works fund not needed therein from' which said transfer could be made. Neither has it been shown to the satisfaction of the court that no injury would arise therefrom as to said mortgagee and said consumers of water of said city of Athens, but on the contrary the court is of the judgment that such transfer, if permitted would tend to violate said mortgage covenants and would be in violation thereof to the injury of said mortgagee; that it would be unfair as to said water consumers resulting in financial injury to them.

The court further finds from the evidence in this case on the issues joined, that the granting of authority for such transfer would be unwarranted under the laws of Ohio governing said water works fund from which such transfer is asked to be made.

There is some claim on the part of the officers of the city that no injury could result to the city in as much as certain officers agreed to and were willing to remit into the water works fund from their salary from month to month during their tenure in office sums in amount sufficiently large to approximately amount to the sum of $2,500. The court is not questioning their good faith and intent but that within itself is not sufficient ground for the granting of this request or authority. If these officers desire to take a portion of their salary for the benefit of the city of Athens in order to secure or obtain this electric survey, undoubtedly it can be made through some arrangement satisfactory to such officers and the ones to be employed in such survey work wherein it would be free from legal impediments or requirements in its relation to the city of Athens.

The petition is therefore dismissed at plaintiff's costs.