Matthias, J.
 

 This court has heretofore considered the validity of transfers of funds received as water rentals to the general fund of a city. - The' question has been before the court in two cases,
 
 City of Cincinnati
 
 v.
 
 Roettinger, a Taxpayer,
 
 105 Ohio St., 145, 137 N. E., 6, and
 
 Hartwig Realty Co.
 
 v.
 
 City of Cleveland,
 
 128 Ohio St., 583, 192 N. E., 880. In those cases, the constitutional validity of Section 3959, General Code, was upheld and it was announced that that section oper-' ated as a valid limitation upon the uses and purposes for which revenues derived from municipally owned waterworks might be applied. The
 
 Roettinger case, supra,
 
 was expressly approved, followed and applied in the
 
 Hartwig Realty Co. case, supra.
 
 It is now contended that these decisions are inapplicable here and hence are not decisive of this case by reason of the fact that the city of Lakewood does not store and pump the water procured for its use and thus supply
 
 *401
 
 it to the water users of the city, but purchases its water and owns and operates only a water distribution system whereby it furnishes the same to the water users of the city at the rates which it prescribes.
 

 The provisions of Sections 614-2 and 5416, General Code, define a waterworks company as one “engaged in the business of supplying water through pipes or tubing, or in a similar manner to consumers * * There is no provision anywhere in the statutes having any reference to the subject which would warrant any distinction between the term “waterworks” owned and operated publicly from that under private ownership and operation. It would seem quite immaterial whether the municipality itself takes the water from the lake or employs another to do so; that is, whether it takes the water directly from the lake or procures it from another who takes it from the lake and then, through its own distribution system, supplies the water to the city’s customers.
 

 The further defense of
 
 res judicata
 
 is made, the claim being that the issues presented in this case were adjudicated and fully determined in a former proceeding in the Court of Common Pleas of Cuyahoga county. The proceeding which it is contended constitutes
 
 res judicata
 
 and' precludes any objection to or interference with the transfer of the funds in question was concededly based upon Section 5625-13a
 
 et seq.,
 
 General Code, and reliance is placed upon those statutory provisions to support the defense that this proceeding cannot be maintained and that the remedy now sought is not available. The statutory provisions relied upon are under the code title “Taxation” and in the chapter headed “Levying Taxes.” Section 5625-13a, General Code, provides as follows:
 

 “In addition to the transfers authorized in Section 5625-13, the taxing authority of any political subdivision may, in the manner hereinafter provided, trans
 
 *402
 
 fer from one fund to another any public funds under its supervision except the proceeds or balances of loans, bond issues, or special levies for the payment thereof, and except the proceeds or balances of funds derived from any excise tax levied by law for a specified purpose or purposes, and except the proceeds or balances of any license fees imposed by law for a specified purpose or purposes.”
 

 It is to be observed that this section, not only from its context but in its very terms, relates solely to funds which are derived from taxation. The very basis of the rulings of this court in the
 
 Boettinger case, supra,
 
 and the
 
 Hartwig Beatty case, supra,
 
 was the fact that the moneys which it was proposed to transfer to a general revenue fund were not raised by taxation at all, but constituted a fund collected from water users for service at rates fixed by a city itself, and that such transfer, if permitted, would sanction the imposition of the burden of furnishing funds required for the administration of the affairs of a city upon the users of water. The provisions of Section 5625-13$
 
 et seq.,
 
 General Code, are general in their terms. They deal with matters of taxation and have reference generally to funds derived therefrom and none at all to funds consisting of the accumulation of moneys collected from water users.
 

 It is to be observed that, under the specific provisions of Section 3959, General Code, surplus revenues derived from water rents may be applied only to repairs, enlargement or extension of the works, or of the reservoirs, and to the payment of any interest on a loan made for their construction, or the creation of a sinking fund for the liquidation of a waterworks’ debt. As was said by Marshall, C. J., in the
 
 Roettinger case, supra:
 

 “Municipalities get their authority for levying taxes and raising revenues from the Legislature, and
 
 *403
 
 the Legislature must be held to have the power to place proper limitations thereon. It being provided that the surplus may be used for extensions, and for interest and loans for waterworks construction, it will be presumed that the legislative intent has thereby been exhausted and that it was not intended that the city should have any power over the surplus beyond the terms of the power expressly granted. For the purpose of determining the legislative intent the maxim
 
 expressio unius est exclusio alterius
 
 has direct application. That maxim has peculiar application to any statute which in terms limits a thing tó be done in a particular form, and in such case it necessarily implies that the thing shall not be done otherwise.”
 

 Under well-established and universally recognized canons of statutory construction, the general provisions of Section 5625-13®
 
 et seq.,
 
 General Code, cannot control or affect the specific' provisions of Section 3959, General Code, which are clearly applicable to the situation under consideration.
 

 Referring to Section 5625-13®, General Code, it was well said by Lieghley, J., in his dissenting opinion in this case: “The statute was inspired by the need for emergency relief in defiance of well-established rules in effect theretofore. It should not be enlarged in its scope by judicial decree. It does not follow that because by this statute the city needs court approval for juggling tax funds that jurisdiction is thereby acquired of the subject-matter to approve the transfer of funds arising from water rents.” If such transfer of funds may be consummated, municipal financial difficulties could be solved by the indefinite increase of water rates followed by such transfer. If that form of taxation is to be adopted, it should be done directly and openly, and with full consideration of the question of its constitutional validity.
 

 Bes judicata
 
 is referred to as an obvious rule of ex
 
 *404
 
 pediency and justice. The doctrine of
 
 res judicata
 
 “is that an existing final judgment or decree rendered upon the merits, and without fraud or collusion, by a court of competent jurisdiction, upon a matter within its jurisdiction, is conclusive of the rights of the parties or their privies.” 15 Ruling Case Law, 950.
 

 It is elementary that to operate as a bar to a subsequent proceeding such judgment must have been the culmination of an action with identity of subject-matter, of the cause of action, of the persons and parties and of the capacity in which the parties appeared as litigants, and further that the parties thereto must have been adversary. The form of proceeding in question was entirely
 
 ex parte
 
 and in no sense of an adversary character, and neither in person nor by representation were the water users, as such, parties thereto. Those who had created the fund which it was proposed to misuse and misapply were not parties personally or by representation, and certainly were not bound by any decree made in that proceeding. The approval or consent of the Tax Commission in a matter with which it had nothing to do is, of course, absolutely without effect.
 

 In the proceeding
 
 “In re City of Lakewood, Peti
 
 tioner,” the city was acting in its own behalf, seeking authority which it was deemed the court had jurisdiction to confer upon it. In the present suit the action is instituted by the Director of Law upon the demand of a citizen, taxpayer and water ratepayer. This must be regarded, then, as an action in reality by the citizen,. taxpayer and water ratepayer. Certainly it is brought in his behalf.
 

 Neither the one who demanded this suit be brought nor any other water ratepayer was named or referred to in the former proceeding, nor were their interests represented or opportunity afforded for the protection of their rights. That proceeding was purely
 
 ex parte
 
 
 *405
 
 and not of an adversary character. We are therefore of opinion that, assuming the jurisdiction of the court to pass upon the question of its own power in the premises, its action does not constitute
 
 res judicata
 
 and preclude the consideration and protection of the rights qf the water ratepayer in this proceeding. It follows that the decisions of this court in the
 
 Boettinger
 
 and
 
 Hartwig Realty cases, supra,
 
 are controlling and require a reversal of the judgments of the Court of Appeals and the Common Pleas Court.
 

 Judgment reversed.
 

 Weygandt, C. J., Jones, Day, Zimmerman and Myers, JJ., concur.
 

 Williams, J., concurs' in the judgment.