STATE, EX REL. LLOYD, APPELLANT, *v.* HURD, MAYOR, ET AL., APPELLEES.

[Cite as State, ex rel. Lloyd, v. Hurd, 1 Ohio App. 2d 447.]

(No. 1601—Decided June 16, 1964.)

*Messrs. Buchwalter, Klinger, Molitoris, Keating & Craciun,* for appellant.

*Mr. Frank R. Bodor,* city solicitor, for appellees.

FRANCE, J. On June 7, 1962, ordinance number 2206 enacted as an emergency measure by the Council of Newton Falls provided, *inter alia,* that 35 percent of the salaries of all elected officials, the Director of Public Safety and Service and the Clerk of Council were a charge against its municipal light plant, and directed that "the sums charged * * * shall be paid into

and credited to the General Fund" from the utility's operating fund. By companion ordinance number 2207 a charge against the light plant for rent, maintenance and upkeep of its office in the city building—in the amount of $35 per month—was made, and it was similarly provided that such amount "shall be paid to and credited to the General Fund."

Plaintiff filed this action as a taxpayer, after complying with requirements of demand, to enjoin the payment of the amounts specified from the light plant's operations. While the water and sewer departments were also charged a percentage of the salaries and an amount as rent, maintenance and upkeep, the claim for injunction was not repeated in the pleadings as to these departments. We are therefore concerned with the validity of the charges only as they concern the light plant.

Upon trial, the Court of Common Pleas found the expenditures were proper administrative costs and denied the injunction. From this decree plaintiff appealed on questions of law only.

In support of his claims of invalidity of the ordinance, plaintiff cites four Ohio cases: *City of Cincinnati* v. *Roettinger*, 105 Ohio St. 145; *Hartwig Realty Co.* v. *City of Cleveland*, 128 Ohio St. 583; *City of Lakewood* v. *Rees*, 132 Ohio St. 399; and *In re Transfer of Funds of Athens*, 22 Ohio Law Abs. 264. All the cited cases concern situations in which rates had been so fixed that the municipality-owned utility had already realized, or was expected to realize, a fine profit on its sales, and that profit, as such, was attempted to be transferred to the municipality's general fund or to some other particular fund of the city. Most of them contain language of some vehemence denouncing the evil of requiring utility users to pay the costs of general government. The Supreme Court cases, in particular, were decided before the amendment of the Ohio statutes, now embodied in Sections 5705.15 and 5705.16, Revised Code, which now permit such transfers of "surplus" funds, subject to Common Pleas Court approval. See *City of Niles* v. *Union Ice Corp.*, 133 Ohio St. 169.

Basically we are not concerned here with questions of creating a profit on a proprietary function of the city and the use of that profit for purposes of general government. Nor does this appear to be a matter of raising the rates of the utility and diverting proceeds of the added rate to general fund pur-

poses merely by calling the additional rate an excise tax. See *City of Franklin* v. *Harrison*, 171 Ohio St. 329.

Here the city claims to be acting in the capacity of the furnisher of lent servants and as landlord to the utility; it has set specific values on those services and quarters and claims that unless the utility pays the city that which it would have to pay to private individuals for rent and management, fiscal and legal services, the utility rate payers are getting a "free ride" at the expense of the taxpayers of the city who must furnish such services. It caims, in short, that the charges made are legitimate costs of utility operation, regardless of the fact that they are furnished by the city as owner, and that those costs should be borne by the utility users.

We have not had cited to us any Ohio cases on the precise point at issue but note that Judge C. William O'Neill, when Attorney General of Ohio, ably covered this theory in 1952 Opinions of Attorney General, 446, No. 1533, which approved such charges against municipally operated utilities. In addition we note that the theory of adjustment of cost in favor of the taxpayer has been approved, in general, in *Swank* v. *Village of Shiloh*, 166 Ohio St. 415, and cases therein cited, where free street lighting by a municipal light plant was involved. The same theory of adjustment for actual services furnished to the municipal utility by the taxpayer has been pursued in many out-of-state cases including *Delong* v. *Rucker*, 227 Ark. 869, 302 S. W. 2d 287; *Ashley* v. *Gilmer* (Texas Civ. App.), 271 S. W. 2d 100; *Messenheimer* v. *Windt*, 211 Ga. 575, 87 S. E. 2d 402. This adjustment in favor of the taxpayer supporting the general fund which furnishes overhead expenses of the utility normally takes the form of rate differential between resident and non-resident rate payers. Such discrimination is lawful in Ohio. See *State, ex rel. McCann*, v. *City of Defiance*, 167 Ohio St. 313, and see, generally, 3 Yokley, Municipal Corporations, 217, Section 503.

So long as the charges exacted for rent and services bear reasonable relation to what the utility, if a privately owned one, would have to pay for the same quarters and services, we feel that the taxpayers, of all people, have no legitimate ground of complaint. For as taxpayers they are the beneficiaries of the prudence of their municipal officials, and as conscientious citizens they should rejoice that the yardstick for rate making is

more nearly a 36-inch yardstick than formerly. In this case evidence was taken on the proportion of time spent by the various city officials on the utility business, and the evidence justifies the findings of both city council and the court that the charges imposed by ordinance were reasonable and justified as expense.

While the idea of a lump sum reimbursement to the general fund for utilities services performed by its salaried officers is one of first impression with us, the concept of paying a certain portion of a municipal officer's salary out of utility funds is scarcely new. Many service directors of cities draw portions of their salaries in this fashion. We see no difference in principle in a reimbursement of the general fund for a portion of the salary of a shared servant. The direct, professional services of auditor and solicitor are similarly beneficial to the utility and similarly deserving of chargeback. As to the mayor's services, while it is somewhat startling that he spends so much time as the evidence indicates on a proprietary function of the city, we have had some notice in the past that municipal utilities make financial contribution to the operations of the mayor's office. See *State, ex rel. Baldine,* v. *Davis, Sheriff,* 1 Ohio App. 2d 117.

As to the salaries of the councilmen and the clerk of council, the charge to the utility is more difficult to justify. We concede however that some matters both of formality and policy (mortgage indebtedness, rate fixing, etc.) do from time to time become matters of concern to council, just as such matters of formality and policy are of concern to corporate boards of directors. In the absence of some showing that the councilmanic salaries in Newton Falls are extremely high, we assume that no more is charged the utility for councilmanic salaries than the normal utility company would pay its board of directors for making similar policy decisions. We therefore find no error in the determination of the Common Pleas Court that the charges were proper items of expense to the utility.

The judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

Brown, P. J., and Jones, J., concur.