The STATE ex rel. MILLER, Pros. Atty., et al., Appellants,

v.

CITY OF COLUMBUS, Appellee.

[Cite as *State ex rel. Miller v. Columbus* (1991), 77 Ohio App.3d 599.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP-429.

Decided Oct. 8, 1991.

**600**

*Michael Miller*, Prosecuting Attorney, and *William J. Owen*, Assistant Prosecuting Attorney, for appellants.

*Ronald J. O'Brien*, City Attorney, and *Thomas P. Behlen*, Assistant City Attorney, for appellee.

PEGGY BRYANT, Judge.

Plaintiff-appellant Blendon Township ("township") appeals from a judgment of the Franklin County Court of Common Pleas, which determined that defendant-appellee, city of Columbus, has no duty to maintain certain fire hydrants which, although attached to city water mains, are located within the township.

According to the stipulations of the parties and other undisputed facts, Franklin County conveyed to the city certain water mains extending beyond the city's corporate limits and into the territory of the township. The water mains deliver water to some township residents who have contracted with the city for water service, and to fire hydrants used for public fire protection in the township. The city initially assumed responsibility for maintaining both the water mains and the fire hydrants attached thereto.

In January 1984, the city adopted Ordinance No. 2496–83, which enacted Columbus City Code ("C.C.") 2517.06, thereby not only declaring that fire hydrants attached to city water lines and located outside the city's corporate limits were not part of the city water system, but also disclaiming any duty to maintain said fire hydrants. When the city subsequently refused to repair at city expense fire hydrants located in the township, the township paid for the necessary repairs.

The township then brought an action against the city, seeking both damages in the amount of the township funds expended for fire hydrant repairs and a

declaratory judgment that the city could not properly disclaim its duty to maintain such fire hydrants. The trial court overruled plaintiffs' motion for summary judgment on February 22, 1991, determining that the challenged ordinance was a constitutional exercise of the city's power, and that the city was not equitably estopped from changing its position regarding fire hydrant maintenance. The parties thereafter agreed, with the consent of the court, that (1) the briefs and stipulations submitted on the summary judgment motion would be construed as the arguments of the parties without trial with regard to plaintiffs' complaint, and (2) the trial court's decision of February 22, 1991 would be construed as the court's decision with regard to plaintiffs' complaint.

Plaintiffs appeal therefrom, assigning two errors:

"1. The court below erred in upholding the constitutionality of Columbus City Ordinance No. 2496–83 and City Code Section 2517.06.

"2. The court below erred in denying appellants' relief under the principle of equitable estoppel."

Plaintiffs' first assignment of error asserts that the trial court erred in upholding the constitutionality of the challenged ordinance, which disclaimed the city's duty to maintain at its own expense fire hydrants attached to city water mains located outside the city's corporate limits.

Preliminarily, we note that the city is a home rule, chartered municipal corporation having powers of local self-government, including the power to adopt and enforce police, sanitary, and similar regulations that do not conflict with general state statutes. Sections 3 and 7, Article XVIII, Ohio Constitution. The city also has the power to own and operate a public utility, and to sell the surplus product thereof outside the city's corporate limits. Sections 4 and 6, Article XVIII, Ohio Constitution. Section 1 of the Columbus City Charter provides that the city shall exercise all powers granted to the city by state law in the manner prescribed by the charter or an ordinance of the city council.

Plaintiffs first argue that under *Hall v. Youngstown* (1968), 15 Ohio St.2d 160, 44 O.O.2d 140, 239 N.E.2d 57, fire hydrants attached to a city water system are a part of that water system, and that the city, therefore, has a duty to maintain fire hydrants which are a part of the city's water system. Unlike the fire hydrants herein, the fire hydrant attached to the city water system in *Hall* was located within the city's corporate limits. Accordingly, the parties therein did not dispute that the city had a duty to maintain the fire hydrant, but sought only to determine whether the city's proprietary capacity as a water provider, or the city's governmental capacity as a firefighter,

provided the basis for the foregoing duty. Thus *Hall* imposes no duty upon the city to maintain fire hydrants attached to city water mains and located outside the city's corporate limits.

However, in an earlier action involving the same parties, this court held that the city, as owner of the fire hydrants at issue, had a duty to maintain such fire hydrants absent either assumption of that duty by another or a city ordinance disclaiming that duty. *State ex rel. Smith v. Columbus* (Apr. 24, 1979), Franklin App. No. 78AP–656, unreported. As a result, even though *Hall* imposes no duty upon the city as to fire hydrants located outside the city's corporate limits, the city has a duty to maintain such fire hydrants pursuant to *Smith,* unless the challenged ordinance terminates that duty.

Plaintiffs next argue that the ordinance disclaiming the city's duty to maintain fire hydrants outside its corporate limits is unconstitutional because the ordinance exceeds the city's home rule power, conflicts with state statutes of general applicability, and is arbitrary, confiscatory, or unreasonable.

█ In its first constitutional argument, plaintiffs, relying upon *Britt v. Columbus* (1974), 38 Ohio St.2d 1, 8, 67 O.O.2d 1, 4, 309 N.E.2d 412, 416, assert that the ordinance exceeds the city's home rule power because its scope extends beyond "local self-government." In *Britt,* the Supreme Court determined that a municipality's powers of self-government do not include the power of eminent domain outside the territorial limits of the municipality. Unlike *Britt,* however, the city's power to establish conditions for the extraterritorial sale of the surplus product of its public utility primarily affects the city's internal affairs, as it has extraterritorial effect only to the extent that an entity outside of the city's corporate limits seeks to purchase such surplus product. *Id.* at 7, 67 O.O.2d at 4, 309 N.E.2d at 415. Hence, the city ordinance establishing conditions for the provision of water service outside the city's corporate limits does not exceed the city's home rule power under *Britt.*

In its second constitutional argument, plaintiffs assert that the ordinance is unconstitutional because it conflicts with general state statutes, specifically R.C. 743.14 through 743.16, and R.C. 743.09. Defendant responds that no conflict exists between the ordinance and any valid state statute relied upon by plaintiffs.

█ In *Westlake v. Mascot Petroleum Co.* (1991), 61 Ohio St.3d 161, 164, 573 N.E.2d 1068, 1071, the Supreme Court noted that in determining whether an ordinance is unconstitutional because it conflicts with state law, we need reach the constitutional issue only if (1) a conflict exists between the terms of the ordinance and the statute at issue, and (2) the municipality seeks to rely on home rule to defeat operation of the state statute. Generally, a conflict exists

between a municipal ordinance and a state statute if " 'the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa.' " *Weir v. Rimmelin* (1984), 15 Ohio St.3d 55, 57, 15 OBR 151, 153, 472 N.E.2d 341, 344. Thus, applying *Westlake*, we first must determine whether a conflict exists between the terms of the ordinance and the statutes relied upon by plaintiffs.

Columbus Ordinance No. 2496–83 provided as follows:

" * * * All other hydrants outside the corporate limits, although attached to Columbus City Water lines, are not a part of the water main system and not within the maintenance responsibility of the City of Columbus, unless otherwise specifically provided for by contract or agreement."

Plaintiffs assert that the foregoing ordinance conflicts with the following state statutes:

"All ordinances, except those relative to taxation or assessment, resolutions, rules, and regulations relative to the construction, maintenance, and operation of water works, mains, hydrants, and service pipes and connections, and the protection thereof, shall operate in a similar manner in the territory outside the municipal corporation when the extensions mentioned in sections 743.12 and 743.13 of the Revised Code have been made, and for the enforcement thereof the jurisdiction of the mayor and police shall extend into and over such territory." (R.C. 743.14.)

"The municipal corporation shall take full charge and control of the mains and water pipes mentioned in sections 742.12 to 743.14, inclusive, of the Revised Code, keep them in repair at its own expense, and, in case of annexation to the municipal corporation of such territory, the municipal corporation shall pay a just compensation therefor and shall thereupon become the owner of them." (R.C. 743.15.)

"The aqueducts and water pipes mentioned in sections 743.12 to 743.15, inclusive, of the Revised Code, shall be so constructed and laid as not to interfere unnecessarily with the use of any streets, roads, alleys, public highways, and public grounds, and the municipal corporation so extending and establishing any part of its water works outside of its limits shall have the same power and jurisdiction to prevent or punish pollution of or injury to the water so conveyed or injury to the water works or any portion thereof as it has within the limits of the municipal corporation." (R.C. 743.16.)

The foregoing statutes, by their own terms, apply only to water system components mentioned in R.C. 743.12 through 743.15: to extensions of the city water system beyond the city's corporate limits which are laid down either by the city or by a private party under the city's supervision. R.C. 743.13.

However, the city neither laid down nor supervised the laying down of the water lines herein, as Franklin County conveyed these water lines to the city at some time after the lines were laid down. Consequently, no conflict exists between the ordinance and the foregoing statutes, because said statutes do not apply to the water lines herein. See, also, *Smith, supra* (R.C. 743.10, 743.14, and 743.15 impose no duty upon a municipal corporation to keep fire hydrants in repair).

█ Plaintiffs also assert that the ordinance conflicts with R.C. 743.09, which provides that:

"No charge shall be made by a municipal corporation or the water-works department thereof for supplying water for extinguishing fire, cleaning fire apparatus, or for furnishing or supplying connections with fire hydrants, and keeping them in repair for fire department purposes, for the cleaning of market houses, or the use of any public building belonging to the municipal corporation.

"In any case in which a school district includes territory not within the boundaries of the municipal corporation, a proportionate charge for water service shall be made in the ratio which the tax valuation of the property outside the municipal corporation bears to the tax valuation of all the property within such school district * * *."

The city responds that, since the foregoing statute violates the utility powers granted to the city by Sections 4 and 6, Article XVIII, Ohio Constitution, as well as the takings clause, Section 19, Article I, Ohio Constitution, no conflict exists between the ordinance and any valid statute.

The language of R.C. 743.09 suggests that the statute be construed to require the municipality to provide free water services to the entities listed therein only when those entities are owned by or located within the municipality. Specifically, R.C. 743.09 requires that a municipality provide free water service to public buildings only when those buildings belong to the municipality, and expressly authorizes a municipality to charge a school district for water services provided thereto to the extent that the school district is not located wholly within the municipality's corporate limits. To the extent that R.C. 743.09 is so construed, the statute does not apply to the water lines herein; thus, no conflict exists between the ordinance and the statute.

█ However, to the extent that R.C. 743.09 is construed to require a municipality to provide free water services to entities located outside of the municipality's corporate limits, the statute arguably conflicts with Sections 4 and 6, Article XVIII, and Section 19, Article I, Ohio Constitution. See *State ex rel. McCann v. Defiance* (1958), 167 Ohio St. 313, 4 O.O.2d 369, 148 N.E.2d

221, paragraphs one and two of the syllabus, and at 316, 4 O.O.2d at 370, 148 N.E.2d at 223; see, also, *Alcorn v. Deckebach* (1928), 31 Ohio App. 142, 147, 166 N.E. 597, 598. Even absent a constitutional conflict, such a construction of R.C. 743.09 is inconsistent with *Fairway Manor, Inc. v. Summit Cty. Bd. of Commrs.* (1988), 36 Ohio St.3d 85, 521 N.E.2d 818, paragraph one of the syllabus, certiorari denied (1989), 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 776, which determined that a municipally owned public utility has no duty to sell its product to extraterritorial entities absent a contractual obligation. In light of *Fairway Manor,* we decline to construe R.C. 743.09 to require the city to provide at no charge services which the city has no duty to perform for compensation. Accordingly, even if R.C. 743.09 is constitutional as applied herein, we find no conflict between the foregoing statute and the challenged ordinance.

Finding no conflict under the facts herein between the terms of the ordinance and the statutes relied upon by plaintiffs, we cannot say that the trial court erred in concluding that such statutes did not preempt the city ordinance.

■ In its last constitutional argument, plaintiffs assert that the city ordinance is unconstitutional because it is arbitrary, confiscatory, and unreasonable. In light of the foregoing legal discussion, we are unable to see that the city's ordinance is arbitrary, confiscatory or unreasonable, as the ordinance simply allows the city to determine the extent to which its resources will be employed outside its own limits. Specifically, as the city notes, the challenged ordinance merely prescribes the manner in which the city shall exercise its power to operate a public utility by establishing conditions for the city's provision of water services outside the city's corporate limits; and since the fire hydrants in the township need not necessarily be used solely for the benefit of the private parties in the township to whom the city provides water service by contract, the ordinance reasonably seeks to shift the burden of maintaining such fire hydrants to the township, which benefits generally from the use thereof. Accordingly, we cannot say that the trial court erred in concluding that plaintiffs failed to demonstrate that the ordinance was arbitrary, confiscatory, or unreasonable.

Having determined that the ordinance does not conflict with state law and is not arbitrary, confiscatory, or unreasonable, we overrule plaintiffs' first assignment of error.

■ Plaintiffs' second assignment of error asserts that the city is equitably estopped from terminating its duty to maintain fire hydrants attached to the city's water mains located outside of the city's corporate limits. In essence, the township apparently interprets the city's past maintenance of the fire

hydrants at issue herein as a representation that the city had a duty to maintain the hydrants in perpetuity, and that once the city began maintaining the fire hydrants at issue and the township relied upon the city's performance of that maintenance, the city cannot thereafter change its position and cease maintaining the fire hydrants.

To make out a prima facie case of equitable estoppel, plaintiffs must show that: (1) the city knowingly made a false representation or concealment of a material fact (or at least took a position contrary to that now taken); (2) the city made that representation in a misleading manner with the intention or expectation that another would rely on it to act; (3) plaintiffs actually relied upon the representation; and (4) plaintiffs relied to their detriment so much that, unless the city is estopped from asserting the truth or a contrary position, plaintiffs would suffer loss. *E.g., Andres v. Perrysburg* (1988), 47 Ohio App.3d 51, 56, 546 N.E.2d 1377, 1383. Moreover, as the Supreme Court noted in *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 145, 555 N.E.2d 630, 632, plaintiffs must show that their reliance upon the city's conduct was reasonable, and that plaintiffs did not know and could not have known that the city's conduct was misleading.[1]

Applying the foregoing standard to the facts herein, we cannot agree that the city's conduct in maintaining the fire hydrants constituted a representation that the city had a duty to maintain the fire hydrants in perpetuity and that, at most, the city's conduct indicated that the city had a duty to maintain the fire hydrants to the extent required by law. Further, the record reveals that the city's conduct has been consistent with its duty, as determined by this court in *Smith, supra,* to maintain the fire hydrants only in the absence of an ordinance disclaiming such duty; thus, plaintiffs have failed to demonstrate that the city's conduct was misleading.

Moreover, to the extent that the township initially misunderstood the import of the city's conduct in maintaining the fire hydrants, the township knew as early as 1978 that the city denied that it had a duty to maintain the fire hydrants in perpetuity. The *Smith* decision also made clear that the city potentially could exercise its home rule powers to terminate its duty to maintain the fire hydrants. Since the foregoing factors provided notice to the township in 1978 that its interpretation of the city's conduct was subject to

---

1. Plaintiffs urge that we apply the elements of equitable estoppel as set forth in *First Fed. S. & L. Assn. v. Perry's Landing, Inc.* (1983), 11 Ohio App.3d 135, 145, 11 OBR 215, 226, 463 N.E.2d 636, 647, rather than those set forth in *Andres, supra.* However, we need not choose between these two formulations, as we base our decision on plaintiffs' failure to prove misleading conduct, an element common to both formulations, and reasonable reliance, as required by *Frantz, supra.*

dispute, we cannot say that the township's continued reliance on that interpretation was reasonable.

Finding neither misleading conduct by the city nor reasonable reliance by the township, the trial court did not err in determining that the city was not equitably estopped from changing its position regarding maintenance of the fire hydrants. We therefore overrule plaintiffs' second assignment of error.

Having overruled plaintiffs' two assignment of error, we affirm the judgment of the trial court.

*Judgment affirmed.*

McCORMAC, J., concurs.

JOHN C. YOUNG, J., concurs separately.

JOHN C. YOUNG, Judge, concurring separately.

I concur in the opinion as written above, but I feel that the issues before this court should be further clarified.

Preliminarily, I note that the city of Columbus is a municipality operating pursuant to a charter as authorized by Section 3, Article XVIII of the Ohio Constitution. Such municipalities are permitted "to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Section 3, Article XVIII, Ohio Constitution. Further, Ohio municipalities are authorized by Sections 4 and 6, Article XVIII, Ohio Constitution, to own and operate a public utility.

Upon adoption of the Columbus City Charter, the city assumed "all powers * * * granted to [Ohio] municipalities by the constitution or laws of [the state of] Ohio[.]" Section 1, Columbus City Charter. However, Section 232 of the Columbus City Charter states that:

"All general laws of the state applicable to municipal corporations, now or hereafter enacted, and which are not in conflict with the provisions of this charter, or with ordinances or resolutions hereafter enacted by the city council, shall be applicable to this city; provided, however, that nothing contained in this charter shall be construed as limiting the power of the city council to enact any ordinance or resolution not in conflict with the constitution of the state or with express provisions of this charter."

In a prior action, this court addressed similar, if not the same, issues that are present in this matter. See *State ex rel. Smith v. Columbus* (Apr. 24, 1979), Franklin App. No. 78AP–656, unreported, which states that:

" * * * The findings of the trial court suggest that the City has the remedy of self-help by adopting a specific ordinance with respect to the fire hydrants in question. From the stipulated facts herein, it appears that the City has done nothing to avoid responsibility for maintenance of the fire hydrants other than to defend this action. The trial court suggests that the City may adopt an ordinance with respect to maintenance of the hydrants. Not having done so, and not pointing to any provision of its charter exempting it from maintenance of the hydrants in question, the City has not demonstrated any prejudice resulting to it even assuming that the trial court's findings both as to duty to maintain and the applicability of R.C. Chapter 743 are erroneous. * * * " *Id.* at 5–6.

Subsequent to the decision in *Smith,* the city of Columbus enacted Columbus City Code ("C.C.") 2517.06, which now reads, in pertinent part, as follows:

" * * * The Director of Public Utilities and Aviation may also approve the maintenance of fire hydrants lying outside the Columbus corporate limits. *All other hydrants outside the corporate limits, although attached to Columbus City Water lines, are not a part of the water main system and not within the maintenance responsibility of the City of Columbus, unless otherwise specifically provided for by contract or agreement."* (Emphasis added.)

Thus, the city of Columbus in enacting C.C. 2517.06 ceased to be obligated to maintain fire hydrants located outside the Columbus city limits but attached to the water lines which are a part of the Columbus water system.

Having cured the problem addressed in *Smith,* it is necessary to examine the case law on the question of whether the Ohio legislature by the enactment of R.C. Chapter 743, or any other legislative pronouncements, can impose upon Ohio charter municipalities the duty to maintain water lines and fire hydrants located outside the municipal boundaries.

In the case of *State ex rel. McCann v. Defiance* (1958), 167 Ohio St. 313, 4 O.O.2d 369, 148 N.E.2d 221, at paragraph one of the syllabus, the Supreme Court stated:

"The General Assembly has no power to enact any statute for the purpose of limiting or restricting by regulation or otherwise the power and authority of a municipality, that owns and operates a public utility for the purpose of supplying the product thereof to such municipality or its inhabitants, to sell and deliver to others the portion of the surplus product of such utility that it is authorized by Sections 4 and 6 of Article XVIII of the Constitution to sell and deliver to such others. (*Swank v. Village of Shiloh* [1957], 166 Ohio St., 415 [2 O.O.2d 401, 143 N.E.2d 586], *Village of Euclid v. Camp Wise Assn.* [1921], 102 Ohio St., 207 [131 N.E. 349], and *Board of Education v. City of*

*Columbus* [1928], 118 Ohio St., 295 [160 N.E. 902], approved and followed. *City of Akron v. Public Utilities Commission* [1948], 149 Ohio St., 347 [37 O.O. 39, 78 N.E.2d 890], *City of Cincinnati v. Roettinger, a Taxpayer* [1922], 105 Ohio St., 145 [137 N.E. 6], *City of Lakewood v. Rees* [1937], 132 Ohio St., 399 [8 O.O. 213, 8 N.E.2d 250], *Hartwig Realty Co. v. City of Cleveland* [1934], 128 Ohio St., 583 [1 O.O. 233, 192 N.E. 880], and *Travelers Ins. Co. v. Village of Wadsworth* [1924], 109 Ohio St., 440 [142 N.E., 900], distinguished.)"

Paragraph two of the syllabus of *McCann* goes on to say that R.C. 743.13 which requires a municipality to furnish water to noninhabitants or limits the price which the municipality may charge for such water service is unconstitutional and void.

In the more recent case of *Fairway Manor, Inc. v. Summit Cty. Bd. of Commrs.* (1988), 36 Ohio St.3d 85, 86, 521 N.E.2d 818, 820, Justice Douglas stated that:

"A municipally owned public utility is exempt from restriction or regulation by the General Assembly. Section 4, Article XVIII, Ohio Constitution; *Swank v. Shiloh* (1957), 166 Ohio St. 415, 2 O.O.2d 401, 143 N.E.2d 586, paragraph one of the syllabus.  * * * "

Finally, the Supreme Court, in the case of *In re Complaint of Residents of Struthers* (1989), 45 Ohio St.3d 227, 543 N.E.2d 794, at paragraph one of the syllabus, stated:

"The provisions of Section 4, Article XVIII of the Ohio Constitution are clear, specific and self-executing, and the powers therein enumerated are not subject to statutory restriction. (*Pfau v. Cincinnati* [1943], 142 Ohio St. 101, 26 O.O. 284, 50 N.E.2d 172, followed.)"

Therefore, even though Section 3, Article XVIII of the Ohio Constitution uses the language that Ohio municipalities may "adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general law," this language is not a limitation upon the authority of an Ohio municipality to acquire and operate a public utility. The authorization for such acquisition and operation is found in Sections 4 and 6, Article XVIII, Ohio Constitution, which have been interpreted by many cases to be self-executing and not subject to limitation by the legislative enactments of the Ohio legislature. *McCann; Fairway Manor, Inc.;* and *In re Complaint of Residents of Struthers, supra.*