Jones and Day, JJ.
 

 The conclusion reached Ly the majority of the court finds that Section 3963, General Code, in so far as it relates to furnishing water “for the use of the public school buildings in such city or village” without charge, is unconstitutional. There being less than six judges of that opinion, the Constitution of the state requires that the judgment of those not concurring shall be controlling, and for that reason the views of the minority are set forth.
 

 The petition seeks to recover for water furnished the schools of East Cleveland school district, and
 
 *608
 
 claims this right by virtue of Sections 3,
 
 4
 
 and 7, Article XVIII of the Constitution. A demurrer to the petition was filed, which was sustained by the court of common pleas and affirmed by the Court of Appeals. This action is brought to reverse the judgment of the Court of Appeals.
 

 The basic question is: May an ordinance of a municipality establish, a rate and require payment for water used by the board of education for the public schools, other than at the rate allowed and provided for in Section 3963, G-eneral Code?
 

 It is quite true that the petition does not affirmatively show that the efficiency of the public schools of the East Cleveland school district will be affected, but, the question submitted being one of power, we deem it immaterial that the petition makes no- affirmative averment in that regard, because it is apparent that if the act of the Legislature! in regard to the maintenance and upkeep and welfare of the public schools is to be subordinate to the ordinances of a charter city, claiming its power under Sections 3,
 
 4,
 
 and 7, Article XVTÍI of the Constitution, it follows that this is an invasion of the long established and sustained policy of the state in regard to the maintenance of its public school system.
 

 We think the basic question then is : Shall the municipality control the public schools within its limits, or does that power rest ini the state?
 

 The Ordinance of 1787, in Article III, made provision :
 

 “Religion, morality, and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged.”
 

 
 *609
 
 Section 3, Article VIII of the Constitution of Ohio of 1802, made like provision in the language following:
 

 “But religion, morality and knowledge, being essentially necessary to good government and the happiness of mankind, schools and the means of instruction shall forever be encouraged by legislative provision.”
 

 In the Constitution of 1851, Section 7 of Article I is as follows:
 

 “Religion, morality, and knowledge, however, being essential to good government, it shall be the duty of the general assembly to pass suitable laws, * * * and to encourage schools and the means of instruction.”
 

 Section 2, Article VI, is as follows:
 

 “The general assembly shall make such provisions, by taxation, or otherwise, as, with the income arising from the school trust fund, will secure a thorough and efficient system of common schools throughout the state. * * *”
 

 Section 3, Article VI, is as follows:
 

 “Provision shall be made by law for the organization, administration and control of the public school system of the state supported by public funds * *
 

 This court in numerous decisions has recognized this state control of the school system of the state.
 
 Board of Education
 
 v.
 
 Volk,
 
 72 Ohio St., 469, 480, 74 N. E., 646, 648:
 

 “Moreover while boards of education are ‘bodies politic and corporate,’ as declared by statute, yet like counties,, they are but
 
 quasi corporations,
 
 and differ materially from municipal corporations as
 
 *610
 
 they are organized in this state. School districts are organized to promote education and carry into effect the provision of section 2 of article 6 of our state constitution. * * * Boards of education for these school districts, are arms or agencies of the state for the promotion of education throughout the state, while ‘municipal corporations are called into existence, either at the direct solicitation or by the free consent of the people who compose them.’ ”
 

 At page 485 (74 N. E., 650), speaking of the property controlled by the board of education, the court further said:
 

 “It is not the private property of the board, but it is authorized to hold it for the state for the promotion and advancement of the education of the youth of the commonwealth, and its control is limited according
 
 to
 
 the will of the sovereign power. The board is a mere instrumentality of the state to accomplish its purpose in establishing and carrying forward a system of common schools throughout the state.”
 

 In the case of
 
 Miller
 
 v.
 
 Korns, Aud.,
 
 107 Ohio St., 287, at page 297, 140 N. E., 773, 776, it was said:
 

 “This declaration is made by the people of the state. It calls for the upbuilding of a system of schools throughout the state, and the attainment of efficiency and thoroughness in that system is thus expressly made a purpose, not local, not municipal, but state wide. With this very state purpose in view, regarding the problem as a state wide problem, the sovereign people made it mandatory upon the general assembly to secure not
 
 *611
 
 merely a system of common schools, but a system thorough and efficient throughout the state.”
 

 Other decisions might be cited to the same effect, to wit, that the state has most jealously exercised this power to create and maintain a system of public schools, and the result has been one of which the state may well be justly proud. The result in no small measure has been attained by this- exercise of sovereign power by the state through a carefully -organized and administered system of public schools. We do not believe that the home-rule provisions of the Constitution, as expressed in Article XVIII of the amendments of 1912, were ever intended by the people to- authorize municipalities to invade this field or detract from this power of the state to secure a thorough and efficient system of public schools throughout the state. That school laws are of general operation throughout the state has been recognized. This court, in
 
 State ex rel.
 
 v.
 
 Spellmire,
 
 67 Ohio St., 77, 65 N. E., 619, held:
 

 “The subject-matter of schools, including school districts, and establishing and changing the same, is of a general nature ; and
 
 all
 
 legislation as to them must be general, having a uniform operation throughout the state.”
 

 Section 3963 is manifestly a law of general operation, and is clearly within the purview of Section 26, Article II of the Constitution,, and is a provision for á system of public schools, within the purview of the constitutional requirement that every encouragement should be giveni to- their maintenance and upkeep. If the municipality, under the guise of local self-government, may de
 
 *612
 
 prive the state of the right to thus contribute to the upkeep of its schools by making provision for water service, may it not extend the same power in other directions 'affecting the maintenance and control and dominion over the public school system?
 

 This conflict of power between the sovereignty of the state, speaking through laws of general operation throughout the state, in a matter committed to it by the Constitution, and the- municipality, seeking to exercise its powers of local self-government, must result in the upholding of the sovereignty of the state, or the result will be such a lessening of power in the state and assumption thereof by municipalities, under the guise of local self-government, as will deprive the state of all sovereignty guaranteed it by the Constitution.
 

 This court in a recent case by unanimous decision recognized the doctrine that a municipality is without power to thwart the operation of a general law by the enactment of an ordinance which interferes with the execution of such general law. The case in question is
 
 Niehaus
 
 v.
 
 State ex
 
 rel.
 
 Board of Education,
 
 110 Ohio St., 47, 144 N. E., 433, and construed the act of the General Assembly, passed April 28, 1908, 99 Ohio Laws, '232, wherein provision was made with reference to the powers of the chief inspector of workshops and factories in the matter of public schools. This was a law of general nature, and of uniform operation throughout the state, and is embodied in the General Code as Section 1035. The question of the conflict of said section and an ordinance of the chartered city of Dayton was before the court for consideration, and the syllabus of that case is as follows:
 

 
 *613
 
 “1. Section 1035, General Oode, which, requires the building inspection department of municipalities having ia regularly organized building inspection department to approve the plans for the erection of a public school building, is a state police regulation, and the power of the General Assembly to enact such legislation is in no sense abridged by the provisions of Section 3, Article X'YIII of the Constitution of Ohio.
 

 “2. The General Assembly of the state having enacted a general law requiring the building inspection departments of municipalities having a regularly organized building inspection department to approve plans for the construction of public school buildings erected within such municipalities, a municipality is without power to thwart the operation of such general law by the enactment of an ordinance requiring the payment of a fee as a condition precedent to compliance therewith."
 

 In the opinion at page 52 (144 N. E., 434), the following is found:
 

 “The status of a municipality in its relation to the sovereign state is not different, by reason or because of the adoption of Section 3, Article XVIII, granting to municipalities authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations as are not in conflict with general laws, than it was prior to the adoption of that provision, or would be in case of its repeal.
 

 “That section of the Constitution grants to municipalities all powers of local self-government and such local police power as is not in conflict with
 
 *614
 
 general laws; in other words, where, prior to the adoption of the amendment, such powers were granted by the sovereign state, through its legislative body, subject to withdrawal by the state through its legislative body, the power now is granted by the sovereign people of the state, subject to withdrawal by the sovereign people; but the sovereignty of the state over the municipality is not divested by that provision, nor does the power of the sovereign to administer public affairs end at the corporation line. The only feature of the sovereign power which is surrendered by the so-called ‘home rule’ provision of the Constitution is that which relates solely to local government. Neither the municipality nor its officers tire relieved 'of any obligation which other political subdivisions and other officers owe to the state, except in the matter of local self-government, and such municipalities and their officers are still agencies of the .state, acting in behalf of that portion of the state in which they have jurisdiction, ’While within its own boundaries, within the limits of the grant, it executes the functions and possesses the attributes of sovereignty, and to that extent as against its citizens and all persons within its jurisdiction has the rights and immunities of the sovereign, yet as against the sovereign it is but an agent whose powers may be withdrawn at the will of the sovereign that granted them. Hence, the power to exercise sovereignty in local self-government, and local police power not in conflict with general law, does not confer upon municipalities the power to enact and enforce legislation which will obstruct or hamper the
 
 *615
 
 sovereign in the exercise of a sovereignty not granted away.”
 

 Our attention is called to the case of
 
 Village of Euclid
 
 v.
 
 Camp Wise Ass’n.,
 
 102 Ohio St., 207, 214, 131 N. E., 349, in which the provision of Section 3963, with reference to water furnished to charitable institutions devoted to the relief of the poor, aged, infirm, or destitute persons, or orphan or delinquent children, was held to be unconstitutional. The reasons for that opinion are not the same as may be urged in support of that portion of Section 3963 which relates to public schools, the latter being so securely based upon constitutional provision and requirement. We are therefore not disposed to regard that case as in conflict with the provision of Section 3963 which relates to supplying “Water for the use of public school buildings in such city or village.”
 

 Since the constitutional provisions referred to specifically relate to our public schools and charge the General Assembly with the duty of passing “suitable laws” and making provisions “by taxation, or otherwise,
 
 *
 
 * * as will secure a thorough and efficient system of common schools throughout the state,” plenary powers of control and maintenance of our common schools were thereby granted to the state, and not to its municipalities. . No mention of our public school system is contained in Section 4, Article XVIII of the -Constitution. That section relates simply to municipalities, and authorizes certain contracts to be made in behalf of such “municipality or its inhabitants.”
 

 Entertaining the view that in the light of the
 
 *616
 
 foregoing decisions of this court, and the provisions of the 'Constitution, Section 3963, General Code, is a proper exercise of legislative power, in so far as it relates to the furnishing of water for the use of public school buildings in cities and villages, that it is a law of general operation throughout the state, our conclusion] is that it is not in conflict with the Constitution of the state, and the same should be upheld. Our decision is, therefore, that the court of common pleas and the Court of Appeals were right in sustaining the demurrer, and their judgment in that behalf is therefore affirmed.
 

 Judgment affirmed.