Marshall, C. J.
 

 The city of Columbus brought suit against the board of education of the city school district of Columbus, Ohio, to recover charges for water service rendered by the municipal plant to the public school buildings within the city of Columbus. The board of education defended on the ground that Section 3963, General Code, exempts boards of education from such charges. That section provides in part:
 

 “No charge shall be made by a city or village, or by the waterworks department thereof, for supplying water for extinguishing fire * * * or for the use of the public school buildings in such city or village.”
 

 The controversy is in every essential detail identical with the case of
 
 City of East Cleveland
 
 v.
 
 Board of Education of City School District of East Cleveland,
 
 112 Ohio St., 607, 148 N. E., 350, decided May 26, 1925. There has been no change in the personnel of this court since that decision. That decision was rendered by two members of this court; the other five judges dissenting. Two judges were able to render a judgment under authority of. a provision in Section 2 of Article IY of the Ohio Constitution, which provides:
 

 “No law shall be held unconstitutional and void by the Supreme Court without the concurrence of at least all but one of the judges, except in the affirmance of a judgment of the Court of Appeals declaring a law unconstitutional and void. ’ ’
 

 In the
 
 East Cleveland case,
 
 the lower courts had
 
 *297
 
 declared Section 3963 to be constitutional, and two members of this court were empowered to affirm that judgment over the dissent of the other five. In the instant-case, the situation is reversed, the lower courts having declared the statute unconstitutional and void, and a majority of the court have power to affirm that judgment. The several members of this court entertain their respective views upon the legal questions involved, as expressed in the opinions published in that case, and the dissenting opinion in that case becomes the reasons of the five members, of this court in support of the judgment of affirmance of the judgment in the instant case, and that opinion will therefore be adopted by reference and without repetition. This opinion might well close at.this point, but it is believed that a service may be rendered by calling attention to the deplorable situation which has grown out of the practical operation of the aforesaid constitutional provision.
 

 After the decision of the
 
 East Cleveland case,
 
 the city of East Cleveland, being dissatisfied with the minority judgment of this court, brought another action in the hope of finding a Court of Appeals more favorable to its views. It succeeded in having the second case submitted to the Court of Appeals of the Ninth district. The judges of the Ninth district were unanimous in reaching the same conclusion as the judges of the Eighth district in the former case, and therefore the same conclusion of the two judges of this court in the case reported in 112 Ohio St., 607, 148 N. E., 350. The law upon this subject seemed by those decisions to be quite well settled as to all municipalities within the territorial boundaries of the Eighth and Ninth appellate districts.
 
 *298
 
 The city of Columbus is located in the Second appellate district, and the city solicitor of the city of Columbus, not being in the least discouraged by the law firmly established in the Eighth and Ninth appellate districts, nor by the minority judgment of this court, brought this action to recover," under facts and circumstances exactly parallel to the East Cleveland controversy. In his brief in the trial court he frankly stated: ‘ ‘ This action is brought in a frank endeavor to make effective the opinion of a majority of the Supreme Court.” Neither the Court of Common Pleas of Franklin county nor the Court of Appeals of the Second appellate district felt bound by the minority judgment of this court, and the Court of Appeals frankly so stated in its opinion in the following pronouncement:
 

 “In the very nature of superior and inferior courts, the latter should follow adjudicated cases by the higher court when the judgment of the higher court rests upon the concurrence of a majority of the judges, but we are of opinion that where the judgment of the Supreme Court rests upon the concurrence of less than a majority that such judgment is binding only in that particular case as an adjudication, but is not binding in other cases under the rule of
 
 stare decisis.”
 

 In the course of that opinion, the Court of Appeals further stated that it did not determine the case upon the authority of either of the opinions in the
 
 East Cleveland
 
 case, but upon its own judgment found Section 3963 to be unconstitutional.
 

 It has always, been recognized as a sound theory that the most important function of courts of last resort is to render uniform the conflicting decisions
 
 *299
 
 of inferior tribunals within the jurisdiction of such courts, but the practical operation of this theory is destroyed in the state of Ohio, so far as the constitutionality of statutes and ordinances is concerned, by the constitutional provisions above referred to. The best possible illustration of that fact is found in the decision of the instant case and the decision of the
 
 East Cleveland case.
 
 In the Second Appellate District, Section 3963 is unconstitutional and void, and must be so treated by all the municipalities of that district. In the Eighth and Ninth Appellate Districts the statute is valid, and must be so administered. In the other six appellate districts, municipalities may not know whether that section is valid and applicable to municipalities within their jurisdictions until the question has been submitted to the various Courts of Appeals of those districts, but all municipalities in those districts may be assured that whatever judgments are rendered by their respective Courts of Appeals will be affirmed by this court until such time as either the constitutional provision is abrogated or changes occur in the personnel of this court. It would be difficult to describe or even imagine a more deplorable situation. That the Court of Appeals in the instant case was justified in disregarding the former decision of this court rendered by two judges finds authoritative sanction in the case of
 
 Hertz
 
 v.
 
 Woodman,
 
 218 U. S., 205, 30 S. Ct., 621, 54 L. Ed., 1001. In that case it was declared:
 

 “The rule of
 
 stare decisis,
 
 though one tending to consistency and uniformity of decision, is not inflexible. Whether it shall be followed or departed from is a question entirely within the discretion of the court, which is again called upon to consider a
 
 *300
 
 question once-decided. The court below in this instance, when called upon to reconsider its former construction of the inheritance tax act, found itself confronted by the fact that this court had been equally divided in opinion as to the proper interpretation of the act, and for that reason alone obliged to affirm the ruling of that and other courts against the legality of the tax which had been collected.' If the decision of the court under review had been in favor of the legality of the tax an affirmance must likewise have resulted from an equal division. That court also found that its own former view of the act had not been satisfactory to the Circuit Court of Appeals for the Eighth Circuit, which court had decided contrarywise in
 
 Westhus
 
 v.
 
 Union Trust Co.,
 
 161 Fed. 795. In such circumstances the court below was not only free to regard the question as one open for determination, but one which might well be certified to this court, that the question of law which had never been authoritatively decided by this court might be so determined by an instruction as to how it should decide the matter when thus presented for reconsideration. ’ ’
 

 In the opinion, which was written by Mr. Justice Lurton, the following earlier cases were cited and commented upon, all of which had stated similar propositions:
 
 Etting
 
 v.
 
 Bank of U. S.,
 
 24 U. S. (11 Wheat.), 59, 78, 6 L. Ed., 419;
 
 Durant
 
 v.
 
 Essex Co.,
 
 74 U. S. (7 Wall.), 107, 110, 19 L. Ed., 151;
 
 Hartman
 
 v.
 
 Greenhow,
 
 102 U. S., 672, 676, 26 L. Ed., 271.
 

 Manifestly, if a decision rendered by a court evenly divided is not an authoritative precedent establishing a legal proposition, the Court of Appeals in the instant case was fully justified in not feeling
 
 *301
 
 bound by a decision rendered by two members of this court, where the other five members entertained an opposite opinion.
 

 As reflecting upon the extent of the evil which has grown out of the constitutional amendment of 1912, above referred to, it will be profitable to note the other cases decided by this court by the concurrence-of a minority of its members.
 

 On April 2,1918, the case of
 
 Barker et al., County Cdmmrs.,
 
 v.
 
 City of Akron,
 
 98 Ohio St., 446, 121 N. E., 646, was decided, in which it was held that Section 5052 of the General Code of Ohio was constitutional by the vote of three judges of the court; the other four being of a contrary opinion. That statute provides that the expense of all general elections, including municipal elections, shall be paid out of the general fund of the county. This constitutional provision again came before this court in the case of
 
 De Witt
 
 v.
 
 State, ex rel. Crabbe, Atty. Gen.,
 
 108 Ohio St., 513, 141 N. E., 551, the court then having under interpretation Section 1465-74, General Code, which provides that', when an injured employee whose employer has failed to comply with the Workmen’s Compensation Act files his application for compensation with the Industrial Commission, instead of bringing a civil suit, and compensation is awarded by the Industrial Commission, and the amount of such award is not paid by the employer within ten days, such award shall constitute a liquidated claim for damages against the employer, which, with an added penalty of 50 per centum, may be recovered for the benefit of such injured employee. The question of the constitutionality of that section was one of the legal issues in the case, and two members of
 
 *302
 
 the court declared it to be constitutional, thereby making the penalty recoverable, though the other five members of the court were of a contrary opinion, and dissented therefrom. In March, 1927, the same statute was under interpretation by the court of Common Pleas of Hamilton county in a suit to recover the penalty under similar circumstances, and the Common Pleas Judge discussed at length the case of
 
 De Witt
 
 v.
 
 State, ex rel., supra,
 
 and followed the course pursued by the lower courts in the instant case, and reached the same conclusion as the five judges, entering judgment for the amount claimed, less the penalty. On June 10, 1927, the Court of Appeals of the First Appellate District, sitting in Butler county, in the case of
 
 Antenen, Recr.,
 
 v.
 
 State, ex rel. Bredwell,
 
 27 Ohio App., 4, 160 N. E., 637, had Section 1465-74 under interpretation, and held that that part of the act awarding a 50 per cent, penalty was unconstitutional and void.
 

 In the case of
 
 Morton
 
 v.
 
 State,
 
 105 Ohio St., 366, 138 N. E., 45, the constitutionality of Section 13668 of the General Code was in issue, which statute provides the procedure for taking depositions in the trial of criminal cases, and the statute was held to be unconstitutional by the vote of six of the judges. In order to reach that result in the
 
 Morton case
 
 one of the judges who did not concur in the judgment, and another judge who even dissented therefrom, nevertheless concurred in declaring the statute unconstitutional, thereby laying the foundation for a judgment of reversal by only four of the seven members of the court. This was a plain concession on the part of two of the judges in order to avoid a situation ere
 
 *303
 
 ated by the amendment of Section 2 of Article IV. In the case of
 
 Royal Green Coach Co.
 
 v.
 
 Public Utilities Commission,
 
 110 Ohio St., 41, 143 N. E., 547, the judge who wrote the opinion was of the opinion that the statute involved was unconstitutional, and therefore concurred in a judgment contrary to his views upon the constitutionality of the statute involved, making the following observation:
 

 “However, since there are not five of my associates who concur with me in this view, the act as enacted cannot be declared unconstitutional, and therefore must be recognized by me, as by all other persons, as an enforceable act of the Legislature.”
 

 In
 
 State, ex rel. Williams,
 
 v.
 
 Industrial Comm.,
 
 116 Ohio St., 45, 156 N. E., 101, three members of this court rendered a judgment, the other four members dissenting, thereby upholding the constitutional validity of Section 1465-75, which requires the Industrial Commission to pay claims of employees of insolvent employers out of the state insurance funds.
 

 - In the case of
 
 Fullwood
 
 v.
 
 City of Canton,
 
 116 Ohio St., 732, 158 N. E., 171, a novel situation was presented. The constitutionality of an ordinance of the city of Canton had been challenged. Two members of the court held that the ordinance did not violate any of the limitations of the Ohio Constitution. Five members held that the ordinance did not operate uniformly upon all the members of a given class, and, further, that the ordinance improperly limited the freedom of contract. Three members of the court were of opinion that the provisions of Section 2 of Article IV, requiring the concurrence of at least all but one of the judges to declare a law to be unconstitutional and void, applies to ordinances of
 
 *304
 
 municipalities. Four members of the court held an ordinance of a municipality not to be a law within the meaning of Section 2 of Article IV, but two of the judges so holding were of opinion that the ordinance under review was constitutional, and could not therefore consistently join in a judgment of reversal. There being more than one member of the court holding the ordinance to be constitutional, and there being not as many as four members holding the ordinance not to be a law who were at the same time concurring in a judgment of reversal, the judgment of the Court of Appeals was necessarily affirmed.
 

 In
 
 Meyers
 
 v.
 
 Copeland,
 
 117 Ohio St., 622, 160 N. E., 855, decided by this court October 26, 1927, an ordinance of the city of Cincinnati was held to be constitutional by three members of this court. The views of the several members of this court presented a situation parallel to that in the case of
 
 Fullwood
 
 v.
 
 Canton, supra.
 

 In
 
 State, ex rel. Jones,
 
 v.
 
 Zangerle,
 
 117 Ohio St., 507, 159 N. E., 564, decided by this court December 21, 1927, the new judges ’ salary law was under interpretation. It was an original suit in this court, where there had been no adjudication in the lower courts, and the constitutionality of certain features of Section 2253, General Code, was the issue. Three judges of this court rendered the judgment, holding it to be constitutional, the other four judges being of a contrary opinion.
 

 This rather elaborate review of the former decisions of this court, each of which has been rendered by a minority of its judges, is made at this time, because, while it places this court in an unenviable,
 
 *305
 
 not to say ridiculous, light before courts and lawyers of other states, it also clearly illustrates that the fault lies with the constitutional provision and the impractical results of its inevitable operation, and not through the fault of this court or any of its members. Manifestly, each and every member of this court must decide each and every proposition before the court according to his own individual judgment and conscience. If it results that decisions are rendered by a minority of the court, and if it further results that certain laws and ordinances are valid and constitutional in certain jurisdictions, and unconstitutional and void in other jurisdictions within the state, such results must continue so long as this provision remains in'the Constitution.
 

 . Without questioning the motives of the Constituí tional Convention of 1912 in submitting this constitutional amendment, and without criticizing the electorate of the state in approving it, it has become apparent that the purposes which were in the minds of the constitutional convention and of the electorate have not been served. If it was intended to strengthen the legislative branch of the government, and relatively weaken the judicial branch, that intent has likewise failed. While the constitutional provision has taken from the Supreme Court the power to declare a legislative act to be unconstitutional by a bare majority vote, it has left an unlimited power so to do in the Court of Appeals. Manifestly, the Constitutional Convention did not desire to invest more power in the intermediate courts than was invested in the court of last resort, and yet, in practice, as shown in the instant case, the Court of Appeals has become the final arbiter of constitutional questions in many important cases. '
 

 
 *306
 
 Attention should also be called to the inconsisr tency of this provision when compared with other provisions in the same section of the Constitution. In an earlier portion of that section we find the following :
 

 “It [the Supreme Court] shall have original jurisdiction in quo warranto, mandamus, habeas corpus, prohibition and procedendo, and appellate jurisdiction in all cases involving questions arising under the constitution of the United States or of this state
 

 It will thus be seen that the same Constitutional Convention, and in the same section of its proposed amendment, safeguarded the rights of litigants to have all cases finally decided by the Supreme Court of the state, where such cases involved questions arising under the Constitution of the United States or of this state. It was wholly inconsistent, therefore, to thus safeguard constitutional questions against final decision in the lower courts, and then incorporate into the same section a provision which in its practical operation has made the Court of Appeals the final arbiter upon the most important constitutional questions coming before the courts.
 

 ^
 
 As a further illustration of the impractical operation of this constitutional provision, it may be pointed out that a cause originating in the probate court might involve the constitutionality of a statute, and the statute might be declared unconstitutional by the probate court, the Common Pleas Court on error, and by one of the judges of the Court of Appeals, and by five judges of the Supreme Court, a total of eight judges, and yet the statute would be held to be constitutional by the concurrence of
 
 *307
 
 two judges of the Court of Appeals, declaring its constitutionality, and affirmed by two judges of the Supreme Court, a total of four.
 

 This amendment to the Ohio Constitution is without a parallel in any state in the Union, and is violative of the basic principle of popular government, which must always rest upon the loyal acceptance of majority rule. In a few matters of superimportance, it is required in legislative bodies that a conclusion can only be reached by a two-thirds majority, and in some instances a three-fourths majority is required. In .no other instance in any of the three branches of government is it provided that a conclusion can be reached by less than a majority. The effect of this constitutional amendment is to give greater force and effect to the opinion of two members of the court than to the other five.
 
 '
 

 The judgment of the Court of Appeals will be affirmed.
 

 Judgment affirmed.
 

 Allen, Kinkade, Eobinson and Matthias, JJ., concur.