Taft, J.
Relator instituted an original mandamus action in the Court of Appeals for Defiance County to compel the city of Defiance, which is a noncharter municipal corporation and is *314 herein referred to as the city, to issue a permit to tap into a water line and furnish water service to relator’s premises from the municipal waterworks system owned and operated by that city, “at a rate not in excess of” that permitted or provided by Section 743.13, Revised Code.
Relator bases her right to the relief sought on Section 743. 13, Revised Code, which reads:
“When any person at his own expense has laid down and extended mains and water pipes or electric light and power lines beyond the limits of a municipal corporation, and the legislative authority thereof, by resolution, has authorized the proper officer of the waterworks to superintend or supervise such laying and extension, the municipal corporation shall furnish water or electricity to the residents and property holders on the line of such facilities. The samé rules and regulations which govern the furnishing of water or electricity to its own citizens shall apply in such cases, except that the rates charged therefor shall not exceed those within the municipal corporation by more than one tenth.”
In 1956, American Louisiana Pipe Line Company had “at” its “own expense * * * laid down and extended mains and water pipes” to its compressor station about four miles “beyond the limits of” that city, “and the legislative authority thereof, by resolution,” had “authorized the proper officer of the waterworks to superintend or supervise such laying and extension.” Relator is a resident and property holder “on the line of such facilities. ’ ’
The Court of Appeals determined that, if the above statute is constitutional, relator is entitled to the relief which she seeks, but it held that that statute is unconstitutional because it conflicts with the provisions of Section 4 of Article XVIII of the Ohio Constitution, which reads:
“Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and *315 franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility.”
The cause is now before this court on appeal from the judgment of the Court of Appeals denying a writ of mandamus.
Besides Section 4 of Article XVIII of the Ohio Constitution, it is appropriate to consider Section 6 of that article in deciding this case. The latter section reads:
“Any municipality, owning or operating a public utility for the purpose of supplying the service or product thereof to the municipality or its inhabitants, may also sell and deliver to others any transportation service of such utility and the surplus product of any other utility in an amount not exceeding in either case 50 per centum of the total service or product supplied by such utility within the municipality. ’ ’
This court has often held that the General Assembly cannot impose any restrictions or limitations upon the power to “operate” a public utility granted to a municipality by Article XVIII of the Ohio Constitution. Swank v. Village of Shiloh, 166 Ohio St., 415, 143 N. E. (2d), 586; Village of Euclid v. Camp Wise Assn., 102 Ohio St., 207, 131 N. E., 349; Board of Education v. City of Columbus, 118 Ohio St., 295, 160 N. E., 902; Board of Education v. Village of Willard, 130 Ohio St., 311, 199 N. E., 74. See City of East Cleveland v. Board of Education, 112 Ohio St., 607, 148 N. E., 350; and Pfau v. City of Cincinnati, 142 Ohio St., 101, 50 N. E. (2d), 172.
However, relator contends that the General Assembly may require a municipality, in the operation of a public utility, to comply with a mere regulation reasonably designed to insure the nondiscriminatory service properly and regularly required from public utilities; and that Section 743.13, Revised Code, only represents such a regulation.
Relator argues that, in operating its waterworks pursuant to Article XVIII, the city is acting in a proprietary capacity; and that, in doing so, it is subject to the same restrictions and regulations as other like proprietors. City of Akron v. Public Utilities Commission, 149 Ohio St., 347, 78 N. E. (2d), 890; Butler, a Taxpayer, v. Karb, Mayor, 96 Ohio St., 472, 117 N. E., 953; Western Reserve Steel Co. v. Village of Cuyahoga Heights, *316 118 Ohio St., 544, 161 N. E., 920. See Travelers Ins. Co. v. Village of Wadsworth, 109 Ohio St., 440, 142 N. E., 900, 33 A. L. R., 711, and State, ex rel. White, v. City of Cleveland, 125 Ohio St., 230, 181 N. E., 24, 86 A. L. R., 1172.
It would ordinarily he the duty or the right of a government to provide those facilities to the public that are provided by a public utility. Hence, such government usually grants to a public utility providing those services certain governmental powers, rights and privileges, such, for example, as the right of eminent domain and protection from competition; and, by reason thereof, the public utility is subject to governmental restraints designed to protect the public from any abuse of such powers, rights and privileges. Such restraints may ordinarily be imposed either by the judicial or legislative authority of the government involved. Scofield v. Railway Co., 43 Ohio St., 571, 593, 3 N. E., 907, 54 Am. Rep., 846.
With respect to a municipally operated public utility, the municipality’s powers, rights and privileges are derived directly from the people, pursuant to the provisions of Sections 4 and 6 of Article XVIII of the Constitution, and not from the General Assembly. Nothing is said in the Constitution to indicate that the powers, rights and privileges so conferred upon municipalities are to be subject to any legislative power other than that conferred by the various sections of Article XVIII of the Constitution (see, in addition to Sections 4 and 6, Sections 3, 7 and 13). Hence, it would appear that the General Assembly has no power to limit or restrict, by regulation or otherwise, the power and authority of a municipality to operate a public utility for the purpose of supplying the product thereof to such municipality or its inhabitants, or selling and delivering to others some of the surplus product thereof, pursuant to the provisions of Sections 4 and 6 of Article XVIII.
The opinions and syllabi in some of the cases referred to in this opinion have language in them tending to indicate that the General Assembly may merely regulate though not restrict or limit such municipal power. However, every regulation limits or restricts something. Hence, if a so-called mere statutory regulation of the General Assembly limits or restricts a power conferred by Sections 4 or 6 of Article XVIII of the Constitu *317 tion, it can be no more effective than any other statutory limitation or restriction of such a power.
In City of Akron v. Public Utilities Commission, 149 Ohio St., 347, 78 N. E. (2d), 890, Akron had made a contract with a gas company to supply gas to its inhabitants. Thereafter, the Public Utilities Commission made a temporary emergency order that “no distributing utility shall supply or be required to supply natural gas service * * * for equipment designed to furnish the source of space heating that replaces other fuel.” This court held that the Public Utilities Commission had authority to so restrict and regulate the gas company, and that its contract with Akron could not make lawful what would otherwise have been unlawful, i. e., the furnishing of gas service to replace other fuels in space heating. In doing so, this court recognized the Public Utilities Commission order as an exercise by the state of its general police power. In effect that case only represents a holding that a law, enacted to protect the public health or safety, can prohibit something that one party has previously contracted to do for another. Cf. Benjamin v. City of Columbus, ante, 103, paragraph 11 of the syllabus. Likewise, if the General Assembly passes an otherwise valid statute requiring certain safety precautions in the operation of certain kinds of machines, it can hardly be argued seriously that such a law will restrict municipalities in the operation of public utilities and will therefore conflict with Section 4 of Article XVIII of the Constitution merely because such machines are frequently used in the operation of such public utilities and the statute will require compliance with those safety precautions in the operation of those machines.
In City of Lakewood v. Rees, 132 Ohio St., 399, 8 N. E. (2d), 250, it was held that Section 3959, General Code (now Section 743.05, Revised Code), was constitutional. That statute provides that surplus revenues derived from municipally owned and operated waterworks “may be applied to the repairs, enlargement or extension of the works or of the reservoirs, the payment of the interest of any loan made for their construction or for the creation of a sinking fund for the liquidation of the debt.” This court held that, by reason of those statutory provisions, such surplus revenues could be applied only for those purposes; and that therefore they could not be used to meet *318 other expenses and obligations of the city. Similar holdings were made in City of Cincinnati v. Roettinger, a Taxpayer, 105 Ohio St., 145, 137 N. E., 6, and Hartwig Realty Co. v. City of Cleveland, 128 Ohio St., 583, 192 N. E., 880. It is apparent that those statutory provisions with respect to use of such surplus revenues, even as construed by this court, do not in any way restrict, interfere with or even regulate the acquisition, construction, ownership, lease or operation of a municipal public utility or the sale or delivery of its product. They do not in any way interfere with the creation of such surplus revenues but only prevent their diversion from the activities authorized by Sections 4 and 6 of Article XVIII of the Constitution. Hence, they do not conflict with those constitutional provisions, although they might be considered as conflicting with Sections 3 or 7 of Article XVIII, conferring power on municipalities to ‘ ‘ exercise all powers of local self-government,” except for the provisions of Section 13 of that article that “laws may be passed to limit the power of municipalities to levy taxes.” Thus, surplus revenues derived from the operation of a municipal waterworks may reasonably be regarded as taxes levied upon water users (see Himebaugh v. City of Canton, 145 Ohio St., 237, 241, 61 N. E. [2d], 483) and thereby subject to legislative limitations pursuant to that Section 13.
There is language in the syllabus and opinion of Travelers Ins. Co. v. Village of Wadsworth, supra (109 Ohio St., 440), tending to indicate that a municipality may operate a public utility not only pursuant to the provisions of Sections 4 and 6 of Article XVIII of the Constitution but also pursuant to laws enacted by the General Assembly. However, that case did not involve any law conflicting with or limiting in any way the municipal powers there claimed to exist.
It may be that, in operating its waterworks or in selling and delivering surplus products therefrom pursuant to Sections 4 and 6 of Article XVIII, the city of Defiance may become subject to some of the restrictions imposed by the common law on private operators of similar public utilities. (Cf. Western Reserve Steel Co. v. Village of Cuyahoga Heights, supra [118 Ohio St., 544], and Butler v. Karb, supra [96 Ohio St., 472], with State, ex rel. Indian Hill Acres, Inc., v. Kellogg, City Mgr., 149 Ohio *319 St., 461, 79 N. E. [2d], 319.) However, we are not confronted with any such problem since relator bases her right to relief entirely upon the provisions of Section 743.13, Revised Code.
It is apparent that Section 743.13, Revised Code, is intended only to and does limit and restrict the power of a municipality, such as the city of Defiance, to do what Section 6 of Article XVIII of the Constitution empowers it to do, i. e., “sell and deliver to others” than its inhabitants a substantial portion of its surplus product. Such others necessarily include relator and other noninhabitants of the city. The statutory words impose limitations and restrictions on the power so conferred on a municipality by the Constitution, not only by requiring the municipality to furnish water to noninhabitants, whether or not the municipality is willing and able to do so, but also by limiting the price which it may charge for such water. To the extent that it does so, that statute is in conflict with Article XVIII of the Constitution and is void.

Judgment affirmed.

Weyganbt, C. J., Zimmerman, Stewart, Matthias, Bell and Herbert, JJ., concur.