Mead-Richer et al., Appellants, *v.* City of Toledo et al., Appellees.

(No. 5470—Decided December 4, 1961.)

*Messrs. Boggs, Boggs & Boggs*, for appellants.
*Mr. Robert C. Dorrell*, for appellees.

SMITH, P. J. The plaintiffs, appellants herein, duly filed a taxpayer's suit against the defendants, appellees herein, the city of Toledo, a charter city, joining its mayor and members of council, seeking a permanent injunction enjoining payment by the city of assessments levied by the County of Lucas, on benefited property for the construction of an interceptor sewer, known as Sanitary Sewer No. 49 (a part of which is located within the city by virtue of annexation proceedings), out of the Sewer Rental Fund created by the city by collection of rental charges against city resident sewer users. The trial court denied the injunction, and the taxpayers appeal to this court on questions of law and fact.

Hereinafter, plaintiffs, appellants herein, will be referred to as the taxpayers, and the defendants, appellees herein, as the city.

The taxpayers claim that such payment disbursed out of such fund is *ultra vires* in that this appropriation of the fund acquires the character of funds derived from taxation subject to constitutional regulation by the state Legislature and is in conflict with state statute, and also that such payment is not for a public purpose but an unlawful payment by the city of a private debt or obligation.

The city contends that the payments are for a public purpose in the operation of a municipal public utility, to wit, a public sewerage system, and, if its ordinance authorizing such disbursement of the sewer fund conflicts with the state statute, then the ordinance is, nevertheless, valid because the statute is unconstitutional as an invasion of the city's constitutional vested right as a home-rule charter city.

The questions presented are, first, whether the ordinance of the city is in conflict with state statute, and, second, if so, whether the state statute is invalid as an encroachment on the

right of municipal home rule under the Constitution, and third, whether the sewer rental charge and the use thereof by the city come within the purview of Section 13 of Article XVIII of the Ohio Constitution, whereby "laws may be passed to limit the power of municipalities to levy taxes."

The evidence, stipulated by the parties to consist of the transcript of all testimony and exhibits attached thereto, offered and received in the Common Pleas Court, reveals that on May 10, 1937, the city passed an ordinance pursuant to Sections 3891-1 and 3891-5 of the General Code, which sections were re-enacted into Sections 729.49 and 729.52 of the Revised Code, effective October 1, 1953, to wit:

Section 729.49, Revised Code. "The legislative authority of a municipal corporation which has installed or is installing sewerage, a system of sewerage, sewage pumping works, or sewage treatment or disposal works for public use, may, by ordinance, establish just and equitable rates or charges of rents to be paid to the municipal corporation for the use of such services, by every person, firm, or corporation whose premises are served by a connection thereto. Such charges shall constitute a lien upon the property served by such connection and if not paid when due shall be collected in the same manner as other municipal corporation taxes. The legislative authority may change such rates or charges from time to time as is deemed advisable. The legislative authority of a municipal corporation operating under a charter may establish such schedule of rates and provide for its administration by designating the department or officer to be charged with the enforcement of Sections 729.49 to 729.52, inclusive, of the Revised Code."

Section 729.52, Revised Code. "The funds received from the collection of sewer rentals under Section 729.49 of the Revised Code shall be deposited weekly with the treasurer of the municipal corporation. Money so deposited shall be kept as a separate and distinct fund and shall be known as the sewer fund. When appropriated by the legislative authority of the municipal corporation, the fund shall be subject to the order of the director of public service of a city or of the board of trustees of public affairs of a village. The director or board shall sign all orders drawn on the treasurer of the municipal corporation against such fund, which fund shall be used for the payment of

the cost of the management, maintenance, operation, and repair of the sewerage system and sewage pumping, treatment, and disposal works. Any surplus in such fund may be used for the enlargement or replacement of the system and works, for the payment of the interest on any debt incurred for the construction thereof, and for the creation of a sinking fund for the payment of such debt, but shall not be used for the extension of a sewerage system to serve unsewered areas or for any other purpose.''

On January 18, 1960, the city enacted the following:

''That it hereby declares and determines as the policy of the city of Toledo that whenever an area is annexed to the city of Toledo in which there has been constructed or is in the process of construction of a sanitary intercepting sewer, the cost and expense of which has been assessed or will be assessed against the benefited property owners by the Board of Commissmissioners of Lucas County, Ohio, then, and in that event, beginning with the installment of assessment next due and payable, the city of Toledo upon such annexation having been finally accepted by council, will assume and order to be paid to the Treasurer of Lucas County, Ohio, or to the property owner paying them, all such installments of assessments outstanding after said time and shall order such then outstanding installments of assessments to be paid annually, prior to billing, as each such installment becomes due and payable. Assessments paid in full before certification and levy by the county auditor or installments of such assessments paid by the property owner after such time shall be refunded to the property owner paying them on the same basis.''

On February 8, 1960, the city passed two ordinances directing the auditor of the city to make withdrawals from the sanitary sewer fund and place such funds in a special account, known as ''Special Projects Account No. 1652,'' on his books, and to draw vouchers against such ''Special Account'' to the Treasurer of Lucas County in payment of the 1959 installment of assessment for county Intercepter Sewer No. 49 assessed against benefited property which had been annexed to the city after the completion of the construction of the sewer; and also to refund and pay to certain property owners the amount of the 1959 installment of assessment levied by the county commission-

ers for Sewer 49, which assessments had theretofore been paid. And, thereupon, the auditor withdrew from the sewer fund the sum of $7,721.84 and placed it in such special account. He then drew two vouchers payable to the Treasurer of Lucas County for payment of the 1959 installment of assessments in the amounts of $1,469 and $3,212.64; and, also from such special account, he drew vouchers totaling $3,040.20 in payment to property owners so assessed to reimburse them for the payment by them of such assessments against their property for Sewer No. 49.

The evidence further shows that intercepter sewers constructed in the city in the past have been financed out of funds obtained from bond issues without assessments being made upon the abutting properties; and that Intercepter Sewer No. 49, constructed by the county, is an extension of the city Intercepter Sewer No. 1640, to which it is connected. It should be observed that payment by the city of that part of assessments for the construction of Intercepter Sewer No. 49 lying within the city uniformly puts the property annexed to the city on an equitable basis with all other property in the city; the annexed area, of course, being subject to sewer rental charges the same as other city resident sewer users.

An indispensable facility of a city is a public sewerage system, and its function is clearly interrelated with a water system. An equitable method to finance the maintenance, enlargement or replacement of such public works is provided by Sections 729.49 and 729.52 of the Revised Code. It should be noted that Section 729.52 provides that the funds collected from a sewer rental charge ''shall be used for the payment of the cost of the management, maintenance, operation, and repair of the sewerage system and sewage pumping, treatment, and disposal works. Any surplus in such fund may be used for the enlargement or replacement of the system and works, for the payment of the interest on any debt incurred for the construction thereof, * * * but shall not be used for the extension of a sewerage system to serve unsewered areas or for any other purpose.''

The assessment here in question is for the construction of Sewer No. 49 so far as the property abutting thereon lies within the city limits. That portion of the sewer is an ''enlarge-

ment'' or ''extension'' of the city sewerage system, a *fait accompli*. The area in question located in the city cannot, therefore, be said to be an ''unsewered'' area. Thus, the proposed payment therefor by the city is not in conflict with the state statute. However, the city contends that the facts cannot support such a construction and that the acquiring of such sewer, as well as the extension of sewers into other areas of the city not now having sewerage facilities, would entail a conflict with the statute. It is further contended, however, that a municipality has authority vested in it by Section 4 of Article XVIII of the Ohio Constitution to ''acquire, construct, own * * * and operate within * * * its corporate limits, any public utility the * * * service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such * * * service.''

It cannot be questioned that the operation of a city sewage system is a municipally-operated public utility on the local level, and that Section 4, Article XVIII of the Constitution is direct authority and self-executing and cannot be limited by statute. This power is recognized by the Legislature in Section 717.01 of the Revised Code. *City of Cleveland* v. *Village of Cuyahoga Heights*, 81 Ohio App., 191; *Colley* v. *Village of Englewood*, 80 Ohio App., 540. See *State, ex rel. Indian Hill Acres, Inc.*, v. *Kellogg, City Mgr.*, 149 Ohio St., 461.

In *Swank* v. *Village of Shiloh*, 166 Ohio St., 415, it is said, at page 417:

''The power of a municipality to own or operate a public utility is granted by the people through the Home-Rule Amendment (Section 3 of Article XVIII of the Constitution of Ohio). And it has been held by this court that powers so granted are not subject to legislative limitation or restriction. *Board of Education of City School Dist. of Columbus* v. *City of Columbus*, 118 Ohio St., 295, 160 N. E., 902.''

Thus, the acquisition by the city of Sewer No. 49 within its limits by payment of the cost of construction, that is the assessments levied on abutting property, is not prohibited by Section 729.52 of the Revised Code if the area in which the sewer is located can be said to be a sewered area. But if the facts do not admit of such construction and such area is treated

as an "unsewered" area, then the ordinance of the city would be in conflict with the statute.

The language of Section 729.52 of the Revised Code appears to be inconsistent and ambiguous where it appears to authorize use of sewer funds by the city "for the enlargement" of the sewerage "system" and "any debt incurred for the construction thereof," but prohibits the use thereof for the extension of a sewerage system to serve "unsewered areas." An "extension," if not an "enlargement," certainly is for the purpose of furnishing sewage facilities to an "unsewered" area. The conclusion is inescapable that the self-executing constitutional authority prevails, and the statute is invalid as an encroachment on the mandate of the people for autonomy in enumerated municipal affairs.

Counsel for taxpayers urge that payment to the County of Lucas of the assessments as they become due on Sewer No. 49 and that the payment to the owners of abutting property of the installment of assessments theretofore paid by them is not for a public purpose and is an unlawful payment of a private debt or obligation. The weakness of such argument is inherent in its statement. A *non sequiter* is met when it must be conceded that the payment by the city unquestionably results in the payment by the city for the construction of Sewer 49, located in the city, and constituting an enlargement or extension of the sewerage system of the city, definitely for a public purpose, and unequivocally not "for any other purpose." This is abundantly clear because the assessment is a lien on the property and not made an obligation of the benefited property owner enforceable by personal judgment, in personam, against such property owner whoever he may be at the time the assessment is in default of payment. The action is in rem or *in invitum* to foreclose the lien on the property for the unpaid assessment. *Dreake, Treas.,* v. *Beasley,* 26 Ohio St., 315; *Chapman* v. *Sollars,* 38 Ohio St., 378; *Tax Commission* v. *National Malleable Castings Co.,* 111 Ohio St., 117; *In re Estate of Kastelic,* 19 Ohio Law Abs., 109; *Wilson, Ex'r.,* v. *Hall,* 6 C. C., 570, 3 C. D., 589.

On the question whether the application of the sewer rental fund in this case comes within the purview of Section 13 of Article XVIII, counsel for taxpayers cite *City of Franklin* v.

*Harrison*, 171 Ohio St., 329, as decisive of their case. It is difficult to comprehend how that case is useful to a decision in the case at bar, since it simply holds to a long line of former decisions of the Supreme Court that a municipality that is furnishing water and sewer services shall not levy a tax on the use of such services for the purpose of providing money for general municipal purposes and is limited by the provision of the Constitution. The ordinance of the city of Franklin levied a tax of 50 per cent computed on the rate charged for water and sewer by the city expressly ''for the purpose of providing revenues for the general fund of the city.'' In the case at bar, under the ordinance no part of the ''sewer rental charge'' goes into the general fund of the city for general municipal operations but is applied to the limited purpose of constructing, acquiring, maintaining and operating the public utility, *i. e.*, a public sewer system.

Thus, in *Himebaugh* v. *City of Canton*, 145 Ohio St., 237, paragraphs one and two of the syllabus read:

''1. Water rates or charges or 'rents' collected by a municipality cannot be classed as taxes so long as their use is limited to the waterworks purposes enumerated in Section 3939, General Code; but if employed as a mere device to lessen the burden of taxation for general governmental purposes, such funds should be considered in the category of taxes.

''2. Water-rent payers are not *ipso facto* taxpayers.''

See, also, *City of Cincinnati* v. *Roettinger*, 105 Ohio St., 145.

The sewer funds appropriated, as in the instant case, in view of the undisputed facts, cannot, by any metaphysics, be considered in the category of taxes.

It is therefore concluded that defendants are entitled to judgment, denying plaintiffs' injunctive relief and dismissal of the petition.

*Judgment accordingly.*

DEEDS, J., concurs.

FESS, J., dissenting. Municipalities receive and derive their power and authority for the exercise of local self-government from Section 3 of Article XVIII of the Ohio Constitution, stipulating that municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce with-

in their limits such local police, sanitary and other similar regulations as are not in conflict with general laws. Under Section 4 of Article XVIII, municipalities are specifically authorized to acquire, construct and operate, within or without their corporate limits, any public utility. But the power thus conferred upon municipalities is not unlimited. In addition to the limitation that the exercise of police powers shall not be in conflict with general laws, Section 13 of Article XVIII provides that laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes. In the exercise of this power the General Assembly may define the purposes for which such taxes or charges may be levied and limit the use of the proceeds derived therefrom to such enumerated purposes.

Thus the General Assembly has enacted Section 729.52, Revised Code, limiting the use of funds collected from sewer rentals to the payment of the cost of the management, maintenance, operation, and repair of the sewerage system and sewage pumping, treatment, and disposal works, and that any surplus in such fund may be used for the enlargement or replacement of the system and works, for the payment of the interest on any debt incurred for the construction thereof, and for the creation of a sinking fund for the payment of such debt, but shall not be used for the extension of a sewerage system to serve unsewered areas *or for any other purposes.*

In *City of Cincinnati* v. *Roettinger,* 105 Ohio St., 145, the municipality argued that Section 3959, General Code (now Section 743.05, Revised Code), imposing a similar limitation upon use of "surplus revenues derived from water rents" conflicted with the home-rule provision of Article XVIII of the Ohio Constitution, especially Section 4 thereof authorizing any municipality to construct and operate any public utility. This contention was rejected. The underlying theory is that water rates or charges or taxes collected by a municipality cannot be classed as taxes so long as their use is limited to waterworks purposes; but if employed as a mere device to lessen the burden of taxation for general governmental purposes, such funds should be considered in the category of taxes. Paragraph one of the syllabus of *Himebaugh* v. *City of Canton,* 145 Ohio St., 237.

It may be contended with some force that the appropriation of funds in the instant case is not a device to lessen the burden

of taxation for general governmental purposes and thus the case is to be distinguished from the facts presented in *City of Franklin* v. *Harrison*, 171 Ohio St., 329, and other cases referred to in the opinion. Nevertheless, the power conferred upon the General Assembly to limit the power of municipalities to levy taxes and incur debts for local purposes includes the power to limit the use of rates or charges to specific purposes. In my opinion, the assumption by the municipality of the payment of assessments levied against property owners for construction of a sewer outside the corporate limits by a county has no reasonably necessary relationship to the maintenance and operation of the sewer system of Toledo or to the other purposes enumerated in the statute. It is true that the $7,000 appropriated and paid to and on behalf of the property owners to date is not substantial, but in view of the large areas containing sewers under annexation to the city of Toledo, under the announced policy, the amount may run into many thousands of dollars and thus dilute the fund limited to operation and maintenance of the sewer system.

In reaching the conclusion, I am not persuaded by the contention of the appellants that such assumption is motivated by a desire to influence the property owners outside the city to favor annexation to such municipality. Should it be assumed that the ordinances are not in conflict with the statute, the motivation underlying the adoption of the ordinances is a matter of legislative, not judicial, determination.

I also dissent on the further ground that the payments are to be made pursuant to an appropriation of public funds for the benefit of private persons without legal or moral justification on the part of the municipality to pay same. 15 McQuillin Municipal Corporations (3 Ed.), Section 39.19. Cf. *State, ex rel. Caton,* v. *Anderson*, 159 Ohio St., 159.