VILLAGE OF DENNISON *v.* MARTIN ET AL., TRUSTEES.*

[Cite as Village of Dennison v. Martin et al., Trustees, 4 Ohio Misc. 1.]

---

*Affirmed by Court of Appeals on March 31, 1965.

2

(No. 36754—Decided June 11, 1964.)

DECLARATORY JUDGMENT: Court of Common Pleas of Tuscarawas County.

*Messrs. Syler & Redinger,* for defendants.
*Mr. Danny D. Johnson,* for plaintiff.

LAMNECK, J.   This is an action brought by the Village of Dennison, Ohio, against the Board of Trustees of Public Affairs of the Village of Dennison, Ohio, in which the village prays for a declaratory judgment in two respects:

First, as to the legality and composition of the board of trustees appointed to manage a waterworks system jointly owned by said village and the City of Uhrichsville, Ohio, authorized by former Section 3615-1, General Code, and Ordinance No. 1079 of said village and Ordinance No. 757 of said city under an agreement dated July 1, 1948; and,

Second, as to the management and operation of the sewerage system of both municipalities under an agreement dated March 2, 1950, entered into by said village and the City of Uhrichsville, Ohio, and approved by Ordinance No. 1123 of said village and Ordinance No. 785 of said city.

The Board of Trustees of Public Affairs of the Village of Dennison, Ohio, authorized to be appointed under Ordinance No. 1124 of the village effective March 2, 1950, claims that it

has duties to perform in respect to the joint waterworks system, and also as to sewerage system of the village and sewage disposal matters.

Under authority conferred by former Section 3615-1, General Code, now Section 715.02, Revised Code, the council of the City of Uhrichsville, Ohio, on July 1, 1948, passed Ordinance No. 757 entitled, "An Ordinance setting forth the agreement between the City of Uhrichsville and the Village of Dennison, Ohio, for the joint management of the Waterworks System owned jointly by said municipalities, and approving said agreement."

On July 2, 1948, the Council of the Village of Dennison, Ohio, passed Ordinance numbered 1079 with the same title. Both ordinances carry the same identical provisions.

The aforesaid ordinances were passed pursuant to the joint purchase by both municipalities of a privately owned waterworks system serving both municipalities. To enable such municipalities to make the purchase, bonds of each municipality were issued in the sum of $375,000, and under the purchase, each municipality thereby acquired an undivided one-half interest in the waterworks system.

Section B of both of said ordinances reads as follows:

"Section B. That said waterworks system shall be managed by a board of trustees of six members, composed of the mayors of each municipality, who shall be members ex officio, and four other members, two to be appointed by the council of each municipality to serve without compensation for a period of two years each, or until their successors are appointed and qualified. Each member of the board shall give bond in an amount satisfactory and payable to the parties hereto jointly, to secure the faithful performance of his duties. The premium upon such bond shall be paid out of the revenue of the waterworks system and shall be considered an expense of operation of the system. Said board of trustees shall have power to employ a waterworks superintendent who in turn shall have authority to hire such employees as he may deem necessary to operate the waterworks system properly and to fix the salaries of such employees subject to the approval of the board of trustees and the councils of both municipalities. Said board of trustees shall render a report to each council every six months

showing the gross revenues of the system for the preceding six months as well as the expenses of operation and maintenance for the same period."

Section C of both of the ordinances reads as follows:

"Section C. The rates to be charged for services rendered by the waterworks system shall be fixed by ordinance adopted by the council of each municipality party hereto, and shall be the same in all respects for each municipality, and in any event shall be sufficient to produce gross revenues adequate (a) to pay the reasonable and proper expenses of operation and maintenance of the system, and (b) to pay, when due, the principal of and interest on the bonds issued by each municipality to pay for such improvement, including any excess funds required by the bond ordinances authorizing the same. After payment of all of the aforesaid charges, any excess may be used for any lawful purpose including the making of any necessary extensions or improvements to the waterworks system which the board of trustees may determine and payment into the bond retirement fund or sinking fund to be invested or used for calling bonds for redemption."

Section D of both ordinances provides in part that the water system contract shall remain in effect until January 1, 1937, or until all the bonds and interest issued by either municipality to acquire the waterworks system shall have been paid in full.

A board of trustees composed of six members as provided by the ordinances took charge of the waterworks system. The first declaration prayed for raises the question as to whether the Board of Trustees of Public Affairs of the Village of Dennison, Ohio, has any duties to perform in the management of the waterworks system.

The defendants contend that the composition of the board of trustees of six members authorized to be appointed by the agreement entered into by both municipalities to manage the joint waterworks system is illegal. They submit that former Section 3973-1, General Code, now Section 743.19, Revised Code, relating specifically to the construction of a joint waterworks system of two or more municipalities prevails over former Section 3615-1, General Code, now Section 715.02, Revised Code, which relates to joint ownership and management of any public work, utility or improvement.

Former Section 3973-1, General Code, now Section 743.19, Revised Code, was enacted in 1917, and former Section 3615-1, General Code, now Section 715.02, Revised Code, was enacted in 1925. Both sections were re-enacted with substantially the same provisions when the Revised Code went into effect on October 1, 1953, and under the bill adopting the Revised Code, are considered the same as of the date the General Code sections were originally enacted.

Section 743.19, Revised Code, now reads as follows:

"Two or more municipal corporations may unite in the construction of a waterworks plant for the purpose of supplying water to the municipal corporations and the inhabitants thereof for domestic, manufacturing, and other purposes. Such municipal corporations may, through their authorized officers, contract with each other for the construction and maintenance of such waterworks, and agree as to a division of the cost and maintenance of such plant and a division of the water produced thereby."

The defendants contend that this section requires that the joint waterworks system in this case must be operated by the Board of Trustees of Public Affairs of the Village of Dennison, by virtue of Section 735.29, Revised Code, and the Director of Public Service of the City of Uhrichsville, by virtue of Section 735.02, Revised Code.

Former Section 3973-1, General Code, now Section 743.19, Revised Code, does provide "that such municipal corporation may, through their authorized officers contract with each other for the construction and maintenance of such waterworks."

This does not mean that the board of public affairs of a village and the service director of a city could enter into such a contract without authority of their respective councils.

It authorizes two or more municipalities to contract with each other for the construction and maintenance of a waterworks. It contains no provisions specifically stating how such system shall be operated and managed.

In *Shook* v. *Mahoning Valley Sanitary Dist.*, 120 Ohio St. 449, 455, it is stated that former Section 3973-1, General Code, enacted in 1917, "does not provide any of the machinery."

Former Section 3615-1, General Code, now Section 715.02, Revised Code, enacted in 1925, is specific in its details and sets

up adequate machinery for the maintenance and management of a joint waterworks system.

Former Section 3615-1, General Code, now Section 715.02, Revised Code, being a later enactment and specific in setting up machinery for the operation and management of a joint waterworks system prevails over former Section 3973-1, General Code, now Section 743.19, Revised Code, which does not detail how a joint waterworks system shall be managed and operated.

Section 715.02, Revised Code, in so far as it relates to this case provides:

"Two or more municipal corporations may enter into an agreement for the joint construction or management, or construction and management, of any public work, utility, or improvement, benefiting each such municipal corporation * * *.

"(A) Any agreement, entered into as provided in this section, shall provide for:

"(1) The method by which the work, utility, or improvement specified therein shall be jointly constructed or managed;

"(2) The method by which any specified power shall be jointly exercised; * * *."

Section 735.28, Revised Code, reads in part as follows:

"In each village in which a waterworks, electric light plant, artificial or natural gas plant, or other similar public utility is situated, or when the legislative authority thereof orders a waterworks, electric light plant, natural or artificial gas plant, or other similar public utility, to be constructed, or to be leased or purchased from any individual, company, or corporation, or when such legislative authority determines to establish a schedule of rates or charges of rents for use of the sewerage system and sewage pumping, treatment, and disposal works of the village, such legislative authority shall establish a board of trustees of public affairs, which shall consist of three members, residents of the village, who shall each be elected for a term of two years."

The first paragraph of Section 735.29, Revised Code, reads as follows:

"The board of trustees of public affairs appointed under Section 735.28, Revised Code, shall manage, conduct, and control the waterworks, electric light plants, artifical or natural gas

plants, or other similar public utilities, furnish supplies of water, electricity, or gas, collect all water, electric, and gas rents, and appoint necessary officers, employees, and agents.''

Sections 735.28 and 735.29, Revised Code, respecting the duties of a board of public affairs of a village, are general statutes applying to all villages. Former Section 3615-1, General Code, now Section 715.02, Revised Code, is a special statute which authorizes two or more municipal corporations to enter into an agreement for the joint construction or management or construction and management of any public work. As a general rule where a general statute and a special statute are in conflict, the special statute prevails over a general statute.

The courts are in agreement that as a general rule general statutory provisions do not control or interfere with specific provisions, but must yield thereto. See 50 Ohio Jurisprudence 2d, 83, Section 104, and the many cases cited therein.

If two statutes are susceptible of a reasonable construction so that neither will be nullified, it is the duty of the court so to interpret them. See *Henrich* v. *Hoffman, Judge*, 148 Ohio St. 23.

The court is, therefore, of the opinion that the provisions of former Section 3615-1, General Code, now Section 715.02, Revised Code, prevails over the provisions of Sections 735.28 and 735.29, Revised Code, where the same are in conflict.

No serious question arises as to the validity of former Section 3615-1, General Code, under which the two municipalities herein agreed to own and operate a waterworks system.

Former Section 3615-1, General Code, provided that the following essential steps must be taken by each municipality to make a valid agreement:

1. Pass an ordinance setting forth the agreement in full.

2. The method by which the work, utility or improvement specified therein shall be jointly constructed and operated or managed.

3. Apportioning the expense of constructing, maintaining or managing any work, utility or improvement or jointly exercising any power.

The agreement entered into by both municipalities and approved by an ordinance of each municipality complies with the

requirements of former Section 3615-1, General Code, in every detail.

Under Section B of both ordinances, the waterworks system shall be managed by a board of trustees of six members, composed of the mayors of each municipality, who shall be members ex officio, and four other members; two to be appointed by the council of each municipality.

The agreement covers the employment of a waterworks superintendent, the hiring of employees, charges for services, collection of revenue, the payment of interest and principal on outstanding bonds, and the making of extensions and improvements of the system.

This court finds no constitutional inhibitions against conferring authority on a board of trustees to operate and manage a joint waterworks system by two municipalities. See *Miami County* v. *City of Dayton*, 92 Ohio St. 215.

The court therefore finds that the Board of Trustees of Public Affairs of the Village of Dennison has no duty to perform in connection with the management of the joint waterworks system owned by the Village of Dennison, Ohio, and the City of Urichsville, Ohio, under the agreement entered into by both municipalities on March 2, 1950. It is proper to provide in such an agreement that the mayor of each municipality shall be an ex officio member of such water board. Section 733.30, Revised Code, provides specifically that "The mayor shall perform all the duties prescribed by the bylaws and ordinances of the municipal corporation." He must therefore serve as a member of a joint waterworks board of trustees, when so directed by ordinance in the proper exercise of the duties of his office.

On March 2, 1950, the Village of Dennison, Ohio, and the City of Uhrichsville, Ohio, entered into an agreement for the furnishing of sewage disposal service and the payment therefor. The agreement was approved by Ordinance No. 1123 of the Village of Dennison, Ohio, and by Ordinance No. 785 of the City of Uhrichsville, Ohio. Both ordinances are identical.

The pertinent parts of said agreement as it relates to this case read as follows:

"Section A. That the city shall construct with the funds

realized from the sale of its mortgage revenue bonds issued for the purpose, a sewage disposal plant of sufficient size and capacity to serve both the city and the village, and will afford such service to the village under the terms and conditions set forth in this agreement.

"Section B. That the sewage disposal plant of the city shall be operated by the director of public service, and the sewerage system of the village shall be operated by its board of trustees of public affairs, with the understanding of both parties that the officers and personnel of the board of trustees of the waterworks system may be used by both municipalities to facilitate the operation of the respective systems, thereby rendering the operation thereof more efficient.

"Section C. The rates to be charged for service rendered by the respective sewerage systems shall be fixed by ordinance adopted by the council of each municipality party hereto, and shall be the same in all respects for each municipality, and in any event shall be sufficient to produce gross revenues adequate (a) to pay the reasonable and proper expenses of operation and maintenance of the systems, and (b) to pay, when due, the principal of and interest on the bonds issued by each municipality to pay for such improvements, including any excess funds required by the bond ordinances authorizing the same.

"Section D. That the village in addition to the payment of the cost of treating its sewage, in order to pay its proportionate share of the cost of constructing the sewage disposal plant, which cost the engineers have estimated to be approximately $499,000, shall pay to the city, beginning with the year 1951, all of the net earnings of the sewer system of the village in excess of 120% of the debt service charges on the outstanding bonds of its present issue of $98,000, after payment of all expenses of operation and maintenance, and such payments shall be made monthly by the village to the city as long as the sewage disposal service is rendered by the city to the village and until all of the bonds issued by the city to pay the cost of constructing the sewage disposal plant have been paid in full, after which time the village may use the excess earnings and any surplus in its bond account over and above the two-year principal and interest surplus required by the bond ordinance, to call its own bonds or for any other lawful purpose.

"Section E. After the bonds issued by the city to pay the cost of extending its sewer system, including the construction of the sewage disposal plant, have been paid in full, the said sewage disposal plant shall be owned jointly by the city and the village in proportion to the amount of principal paid by each which shall be determined by giving credit to the village for the amount paid each year to the city, after deducting therefrom the cost of treating the sewage of the village.

"Section F. This contract shall remain in effect until January 1, 1990, or until all of the bonds and interest issued by either municipality to extend their respective sewerage systems shall have been paid in full. After all of said bonds have been paid in full, the sewerage systems shall be operated jointly for the proportionate benefit of each municipality until other arrangements, satisfactory to both parties, have been made."

The sewage disposal plant was constructed by the City of Uhrichsville, Ohio, as provided by said agreement.

A careful reading of the agreement discloses the following:

1. That each municipality has a separate sewerage system.

2. That the city has present title to a sewage disposal plant operated by its director of public service.

3. That said sewage disposal plant under the agreement serves both municipalities.

4. That the same charges for sewer service shall be fixed by ordinance adopted by the council of each municipality.

5. That the Village of Dennison, Ohio, has no interest in said disposal plant until after the bonds issued by the City of Uhrichsville, Ohio, to extend its sewer system and the cost of constructing the sewage disposal plant have been paid in full.

6. That each municipality is charged with the collection of charge for sewage service, but may turn the collection thereof over to the board of trustees of the Twin City Water Board as provided by Section B of said ordinances.

Until January 1, 1990, or until all of the bonds and interest issued by either municipality to extend their respective sewerage shall have been paid in full the agreement provides for the furnishing of sewage disposal service by the City of Uhrichsville to the Village of Dennison, Ohio, and does not provide for a joint operation of sewerage systems at this time. Said

ordinances at this time are not within the purview of former Section 3615-1, General Code, now Section 715.02, Revised Code, which provides for the joint ownership or management or ownership and management of any public work, utility or improvement.

A sewerage system of a municipality maintained and operated for its inhabitants is a public utility within the purview of Section 4, Article XVIII of the Constitution of Ohio. See *Mead-Richer* v. *City of Toledo*, 114 Ohio App. 369.

Said section in so far as it relates to this case provides in part that "any municipality may * * * own, lease, and operate, within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service."

Section 6, Article XVIII of the Constitution of Ohio provides in part in so far as it relates to this case, that "any municipality * * * may also sell and deliver to others * * * the surplus product of any other utility in an amount not exceeding fifty per centum of the total service or product supplied by such utility within the municipality."

A liberal construction of this constitutional provision would authorize the City of Uhrichsville to furnish sewage disposal service to the Village of Dennison.

Section 4 of Article XVIII of the Constitution of Ohio which authorizes a municipality to "contract with others for any such product or service" (any public utility) would permit the Village of Dennison to purchase sewage disposal service from the City of Uhrichsville, Ohio.

Under section B of the agreement dated March 2, 1950, for the furnishing of sewage disposal service by the City of Uhrichsville to the Village of Dennison, it is provided that the sewerage system of the Village of Dennison "shall be operated by its board of trustees of public affairs."

Under the facts in this case does said board of trustees of public affairs have any duties to perform relative to the sewerage system of the Village of Dennison, Ohio, and if so, to what extent?

Under Section 735.28, Revised Code, a village is authorized

to establish a board of trustees of public affairs as it relates to its sewerage system only when "the legislative authority determines to establish a schedule of rates, or charges of rents for use of the sewerage system and sewage pumping, treatment, and disposal works of the village."

In this case, the Village of Dennison has no sewage disposal works at this time. It is purchasing a sewage disposal service from the City of Uhrichsville and under the agreement of March 2, 1950, it is making payments on the purchase of an interest in the sewage disposal plant of the City of Uhrichsville, Ohio.

A liberal construction of this section in connection with Section 729.49, Revised Code, hereinafter cited would permit the establishment of a board of trustees of public affairs for a village when the council of the village "determines to establish a schedule of rates or charges of rents for use of the sewerage system," even though it does not operate a sewage disposal plant, if it purchases sewage disposal service from an adjoining municipality.

Section 735.29, Revised Code, defines the duties of the board of trustees of public affairs of a village.

The first paragraph of said section reads as follows:

"The board of trustees of public affairs appointed under Section 735.28 of the Revised Code shall manage, conduct, and control the waterworks, electric light plants, artificial or natural gas plants, or other similar public utilities, furnish supplies of water, electricity, or gas, collect all water, electric, and gas rents, and appoint necessary officers, employees, and agents."

No mention is made of a sewerage system in this section.

Section 729.49, Revised Code, authorizes a village to establish just and equitable rates or charges of rents, to be paid to the municipal corporation, for the use of its sewerage system, sewage pumping works, or sewage treatment or disposal works services.

Under Section 729.50, Revised Code, when a village has established a schedule of rates or charges of rent for such use, the board of trustees of public affairs shall manage, conduct and control the sewerage system and sewage pumping, treatment and disposal works. Under this section the board of

trustees of public affairs shall assume all duties in relation to sewers, imposed upon the street commissioner under Section 735.32, Revised Code.

Under Section 729.52, Revised Code, all funds received for sewer rentals in a village charged under the authority of Section 729.49, Revised Code, shall be deposited weekly with the village treasurer. Such moneys shall be kept in a separate account and shall be known as the sewer fund. When appropriated by the village council, the fund shall be subject to the order of the board of trustees of public affairs to be expended as provided by said section.

It will therefore be adjudged and declared that the Board of Trustees of Public Affairs of the Village of Dennison, Ohio, has present jurisdiction over the sewerage system of the village within the confines of the village; that said board shall manage, conduct and control said sewerage system; appoint such necessary officers, employees and agents until such time as the Village of Dennison acquires an interest in the Uhrichsville, Ohio, sewer disposal plant; that the moneys collected from sewer service shall be deposited weekly with the Village Treasurer of Dennison, Ohio, and shall be kept in a separate and distinct fund known as the sewer fund and when appropriated by the Village Council of Dennison, Ohio, shall be subject to the order of said board of trustees of public affairs to be expended as provided by Section 729.52, Revised Code, and the agreement of the City of Uhrichsville, Ohio, and the Village of Dennison, Ohio, dated March 2, 1950.

*Judgment accordingly.*